# HART *vs.* MARKS.

## *In the matter of the Estate of* DAVID HART, *deceased.*

IN the case of a bequest of the residue to legatees *nominatim* " equally, share and share alike," the legatees are tenants in common, and the share of any one happening to die before the testator, lapses for the benefit of the testator's next of kin, as a portion of the estate found, under the circumstances, not to be validly bequeathed by the will.

On the final accounting of the executors, it appeared that there was no person to answer the name of an annuitant described in his will, as the testator's " cousin, Paris Piccard ;" but parol evidence was given, that his cousin Priscilla Piccard was usually named by him as described in the will.

Parol proof may always be used to apply a will ; that is, to ascertain the person intended by the testator, by a description, which, though not ambiguous on its face, cannot be applied precisely as expressed in the instrument. The plain terms of a testament cannot be altered, by showing the testator's declarations. The writing must prevail, and be interpreted by its own language ; but it is competent to point out by proof the person who answers the description of a legatee ; and if there be no one who exactly meets the description, the person intended may be ascertained by means of extrinsic evidence.

J. L. RIKER, *for Executors.*
J. G. VOSE, *for Claimants.*

HARVARD LAW SCHOOL LIBRARY.

THE SURROGATE.—The testator provided by the residuary clause of his will as follows : " All the rest, residue, and remainder of my estate, as well real as personal, or the proceeds thereof, I give, devise, and bequeath unto my sisters, Ella, Zipporah, Hetty, Rebecca, and Rachel, equally, share and share alike, for ever." Hetty Marks, one of the sisters, died before the testator; and I am asked to determine whether her share lapsed, or passed to her personal representatives—and if it lapsed, whether it enured to the benefit of the other legatees named in the residuary clause, or is to be distributed among the testator's next of kin, as a portion of his estate not disposed of.

Residuary legatees take all the residue of the estate remaining after the other legacies, general and specific, have been satisfied; and if any particular legacy fail, by reason of the decease of the legatee before the testator, or for any other cause, the amount falls into the general residue. But if the residuary bequest or any portion of it fail, then to the extent of such failure there is no valid testamentary provision; and, consequently, to that extent the testator has died intestate. Now, in the present case, the residuary legatees are by the terms of the will tenants in common—that is to say, the legacy is not of the whole to the five jointly, but of one-fifth to each one of the five severally; this severance being created by the words " equally, share and share alike." It follows, therefore, that by the death of Mrs. Marks before her brother, the bequest of one-fifth of the residue in her favor lapsed, and there being no provision substituting her next of kin in her place, in case of death, the one-fifth which she would have received, if living, must be distributed among the testator's next of kin, as a portion of his estate, found, under the circumstances, not to be validly bequeathed by his will.

The testator gave an annuity to " Paris Piccard," described in the will as his " cousin." Parol proof has been offered, that the deceased had no cousin named " Paris Piccard," but that his cousin, named " Priscilla Piccard," was usually named by him as described in the will. I think this evidence competent. Parol proof may always be used to apply the will—that is, to ascertain the person intended by the testator, by a description, which, though not ambiguous on its face, cannot be applied precisely as expressed in the instrument. Strictly speaking, the testator had no cousin named Paris, and then the legacy must fall, unless we seek by extrinsic evidence to ascertain whom he intended by the description. We cannot, indeed, alter the plain terms of a written instrument, by showing the testator's declarations, in contradiction of the will, or in addition to it. The writing must prevail, and must be interpreted by its own language. But it is

entirely competent to point out by proof the person who answers the description of a legatee, as contained in the will. There can be no doubt on that point. But if there be no person who exactly answers the description, then we are compelled to inquire by means of extrinsic evidence whom the testator intended. The court at all times may demand to be put in the place of the testator, in order to understand his will, its references, allusions, and descriptions. It is only by knowing the history of the parties, and looking at the surrounding facts, that we can at times clearly see what the testator designed. If, in describing any person in his will, he has used a name which he was accustomed to apply to that party, on proof of the fact, the description contained in the will may be applied with entire certainty. If the will be written in a foreign language, it can be translated—if it contain terms which the writer ordinarily used in a peculiar sense, that can be shown; and if descriptions are made by names, which he was in the habit of applying to the parties, his meaning can be gathered just as well from the use of those names, as if he had employed the appellations by which they were commonly known. I have no doubt that this is a legitimate mode of interpreting a will, by the aid of extrinsic evidence in exposition of the habits and phraseology of the testator; and it must, therefore, be declared that the annuity be paid to the claimant.