*The final accounting in the Estate of* MARY E. CHAPEAU.

WHERE a legacy of $12,000 was given to nephews and nieces, viz., "the five children of C., to be equally divided, share and share alike," and one died, in testator's lifetime, leaving a husband and child surviving; *Held*, that the children took individually and not as a class, and that the surviving four took each a fifth, and the remaining fifth fell into the residuum.

The same deceased legatee being also a residuary legatee, and the residuum being bequeathed to several in common; *Held*, that her share of the residuum passed to the next of kin of testatrix.

Reference to an auditor to report the amount to be retained by executors to keep a lot in a cemetery in order, as directed by the will.

A sum given to a person named as executor, as compensation for his services, *Held*, to fall into the residuum where that executor never qualified.

STEPHEN CAMBRELENG, *Executor, in person.*

THE SURROGATE. — Upon the final settlement of the

executor's account, in this estate, several questions of construction of the will have arisen, which have been submitted for my decision.

The will is as follows:

In the name of God: Amen. I, Mary E. Chapeau, at present residing in the city of New York, being of sound and disposing mind and memory, but aware of the uncertainty of this life, do make, publish and declare this to be my last will and testament, as well in regard to such property, real or personal, as I may now have, or as I may be possessed of at the time of my decease; in manner and form following, namely:

First. I direct my executors, hereafter named, out of my estate, to pay all my just debts, and funeral expenses, and such sums as they may deem proper for any additional expenditures relating to my interment.

Secondly. I give and bequeath to the three daughters of my deceased friend, Mrs. Lucy Olivia Grimes, late of Pitt county, North Carolina, namely, Mary, now Mrs. Cowper, Annie Grimes and Olivia Grimes, and to the survivor of them, the sum of two thousand dollars, to be equally divided between them, as a slight token of my affection, and a grateful recollection of their mother's kind care of the children of my deceased brother.

Thirdly. I give and bequeath to the rector, church-wardens, and vestrymen of the Protestant Episcopal Church in Washington, North Carolina, known as St. Peter's Church, the sum of one thousand dollars, to be by them applied to the use of the said church.

Fourthly. I give and bequeath to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, incorporated by the State of New York in the year one thousand eight hundred and fifty-six, the sum of two thousand dollars, to be applied to the uses and purposes of said society, that is to say, one-half to domestic and one-half to foreign missions.

Fifthly. I give and bequeath to the Treasurer of the Convention of the Protestant Episcopal Church in the Diocese of North Carolina, and his successors in office, for the use and benefit of disabled clergymen of the Episcopal Church in North Carolina, the sum of one thousand dollars.

Sixthly. I give and bequeath to the Treasurer of the Convention of the Protestant Episcopal Church in the Diocese of North Carolina, and his successors in office, to be applied by him to the education of the orphan children of poor deceased clergymen of the Protestant Episcopal Church in the Diocese of North Carolina, the sum of one thousand dollars.

Seventhly. I give, devise and bequeath to the Treasurer of the New York State Colonization Society, for the uses and purposes of said society, the sum of two thousand dollars.

Eightly. I give and bequeath to Jane Carswell, in case she shall be in my service at the time of my decease, the sum of five hundred dollars.

Ninthly. I give and bequeath, unto Stephen Cambreleng the sum of five thousand dollars. In trust, however, and to and for the uses and purposes following, namely: In trust to invest the same on bond and mortgage or other sufficient and proper security, and to change the investment from time to time, as may be necessary and proper, and to collect the interest, dividend or income thereof, from time to time, and, after payment of all necessary charges and expenses, to apply the income thereof to the use of Maria La Nieves Eligio, of Sagua La Grande, in the Island of Cuba, for her sole and separate use during the term of her natural life, and immediately on her decease, I give and bequeath the said sum of five thousand dollars, and any accumulated interest thereon, to her children, in equal shares. And if any of them should be dead, leaving issue, such issue to take the share to which the parent would have been entitled if then living.

Tenthly. I give and bequeath to my nephew, George E. B. Singeltary, in addition to the provision I have heretofore made for him, the further sum of four thousand dollars.

Eleventhly. I give and bequeath to my nephew, Richard W. Singeltary, in addition to the provision which I have heretofore made for him, the further sum of four thousand dollars.

Twelfthly. I give and bequeath to my nephew, Thomas C. Singeltary, in addition to the provision I have heretofore made for him, the further sum of four thousand dollars.

Thirteenthly. I give and bequeath to the five children of John B. Chapeau (the brother of my late husband), now residing in Charleston, South Carolina, in addition to the provision of five thousand dollars I have heretofore made for them, the further sum of twelve thousand dollars, to be equally divided between them, share and share alike; the shares given to such of them as may be daughters to be received and held by them as their own separate estate, in the same manner as if they were unmarried, notwithstanding any present or future coverture.

Fourteenthly. I desire, and it is my will, that my executors appropriate such sum, and in such manner as they may deem necessary and proper, to keep the lot belonging to me at Greenwood in good order.

Fifteenthly. I give and bequeath to my executors, hereinafter named, two thousand dollars apiece, for their attention to the settlement of my estate.

Sixteenthly. As to all the rest and residue of my estate, real and personal, I give, devise and bequeath the one equal half part thereof to the children of my deceased brother, the Reverend John Singeltary, in equal shares; and the other one equal half part thereof to the children of John B. Chapeau (the brother of my late husband) in equal shares, and to be held by them in the same manner as I have directed in regard to the legacy given in and by the thirteenth article of this my will. . . .

Seventeenthly. It is further my will, and I do direct in regard to the legacies, bequests and devises to my nephews, that, should either of them die before me, without issue, the survivors are to take the share of the party so dying without issue, but should the party so dying leave issue such issue shall take the share of the one so dying.

Eighteenthly. I hereby nominate and appoint my friends, William H. Aspinwall and Stephen Cambreleng, of the city of New York, to be the executors of this my last will and testament, and I hereby authorize and empower them to sell and dispose of my estate, real and personal, at public or private sale, and on such terms as they may deem judicious and proper. And I do hereby revoke and make void all and every will and testament by me heretofore made, declaring this only to be my last will and testament. :

In witness whereof I have hereunto set my hand and seal this eleventh day of October, in the year of our Lord one thousand eight hundred and sixty.

MARY E. CHAPEAU.   [L. S.]

Signed, sealed, published and declared by the testatrix, Mary E. Chapeau, to be her last will and testament in the presence of us who, in her presence, and at her request, and in the presence of each other, have hereto subscribed our names as witnesses hereto. The word " thirteenth," written on an erasure, sixth line, fifth page, before execution.

AUGUSTUS R. MACDONOUGH,<br>878 Broadway, N. Y.

JONATHAN EDWARDS,
263 Greene street, N. Y.

I, Mary E. Chapeau, do make this as a codicil to my annexed will:

The legacy of five hundred dollars which I have therein given to Jane Carswell in case she should be in my service at my decease, I hereby give to her absolutely,

whether in my service at my decease or not, in acknowledgment of her faithful attention and care of me while in my service.

In witness whereof I have, to this codicil, set my hand and seal this fourth day of June, in the year of our Lord one thousand eight hundred and sixty-three.

MARY E. CHAPEAU. [L. S.]

Signed, sealed, published and declared by the said Mary E. Chapeau as a codicil to her last will and testament in the presence of us, who, at her request, and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto (the word "Jane" being written over an erasure prior to such signatures.)

JOHN PYNE,

35 Great Jones street, New York.

CHURCHILL J. CAMBRELENG,

35 Great Jones street, New York.

The first question under this will is in regard to the bequest to the "five children" of John B. Chapeau.

It appears that at the date of the will there were five children, but that subsequently, and before the decease of the testatrix, one of them, a daughter, died, leaving her husband and one child surviving her.

The thirteenth clause of the will is in these words:

"I give and bequeath to the five children of John B. Chapeau, the brother of my late husband, now residing in Charleston, South Carolina, in addition to the provision of $5,000 I have heretofore made for them, the further sum of $12,000 to be equally divided between them, share and share alike; the shares given to such of them as may be daughters, to be received and held by them as their own separate estate, in the same manner as if they were unmarried, notwithstanding any present or future coverture."

The sixteenth clause is in the following words:

" As to all the rest and residue of my estate, real and personal, I give, devise and bequeath the one equal half part thereof to the children of my deceased brother, the Reverend John Singeltary, in equal shares, and the other one equal half part thereof to the children of John B. Chapeau (the brother of my late husband) in equal shares, and to be held by them in the same manner as I have directed in regard to the legacy given in and by the thirteenth article of this my will."

The question is whether these bequests are to the children of John B. Chapeau as a class, or to them individually. If to them as a class, then the whole of the bequests, both under the thirteenth and sixteenth clauses, go to the four surviving children. But if they do not take as a class, but individually, then the legacy under the thirteenth clause to the one who died, lapsed and passed into the residuum. The naming five as the number of the children is, in my judgment, inconsistent with their being regarded as a class, and is equivalent to naming them individually.

Again, the legacy is " to be equally divided between them, share and share alike." And again, special provision is made in regard to such as were daughters, viz : that they should hold their shares separately, notwithstanding any present or future coverture. All these provisions seem inconsistent with the idea of their taking as a class, but seem to look to their taking their shares individually.

The sixteenth clause, disposing of the residue of the estate, is substantially the same as the thirteenth clause, so far as the children of John B. Chapeau are concerned. One-half of the residuum is given to " the children of John B. Chapeau," their number not being mentioned here, however, as in the thirteenth clause. But the thirteenth clause is nevertheless expressly referred to, and direction given that those children are to take in the same manner as indicated in the thirteenth clause.

The preceding remarks as to the thirteenth clause are,

therefore, applicable to this sixteenth clause. If the bequest to the deceased daughter of J. B. Chapeau in the residuum lapsed, supposing the other four children not to take as a class, then the share in the residuum so lapsing passed, as undisposed of, to the next of kin of the testatrix.

Supposing the correct construction of the will under consideration to be that the children of J. B. Chapeau took individually and not as a class, then the result would be that of the $12,000 given under the thirteenth clause to the five children of John B. Chapeau, the surviving four children are each entitled to one-fifth; the other one-fifth falling into the residuum of the estate. Of the one-half of that residuum the four surviving children of John B. Chapeau are each entitled to one-fifth, and the remaining one-fifth passes to the next of kin of the testatrix.

There is a particular provision in our statute with respect to legatees who are descendants :

" Whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, leaving a child or other descendant who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or decedent of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate." (3 *Revised Statutes, 5th ed., p.* 146, § 47.)

This provision applies exclusively to descendants of the testator. An act of the Assembly of Pennsylvania of 1810, which, like our own, was intended to prevent the lapse of a legacy bequeathed to a child, or other lineal descendant of the testator, was held not to reach the case of a bequest to a niece and her heirs; and in that case the legatee having died in the lifetime of the testator, leaving a husband and children, the legacy was held to have lapsed. (*Dickinson* v. *Purvis,* 3 *Serg. & Rawles,* 71.)

A legacy lapses when the legatee, not being a lineal

descendant of the testator, dies in his lifetime, notwithstanding the testator knew of his death and intended that his children should have the benefit of the legacy. (*Comfort* v. *Mather*, 3 *Watts & Ser.*, 450.)

It is clear from these decisions that the child of this deceased legatee is not entitled to any part of the legacy. The question remains whether it enures to the benefit of her brothers and sisters, or falls into the residuum, or belongs to the next of kin as property undisposed of.

There is a distinction in the English books between a lapsed devise of real estate and a lapsed legacy of personal property; and, while the latter falls into the residuum and passes by the residuary clause, if any there be, and if there be none, passes to the next of kin, the former does not pass to the residuary devisee, but, on the devise becoming void, the estate descends to the heirs-at-law. (*Hayden* v. *Stoughton*, 5 *Pick.*, 528.)

This distinction has been removed in New York and some other States by statute. (*Prescott* v. *Prescott*, 7 *Metcalf*, 146; *Blaney* v. *Blaney*, 1 *Cushing*, 107; *Van Kleeck* v. *Dutch Ch.*, 20 *Wend. R.*, 499.) [This, however, is doubted by Cowen, Justice, in *Van Kortland* v. *Kip*, 1 *Hill*, 596.]

If a residuary legacy is given to several persons in joint tenancy, if one or more of them happen to die in the lifetime of the testator, the shares of those dying will survive to the others. (*Webster* v. *Webster*, 2 *P. Wms.*, 347.) But if the residue be given to several as tenants in common, the shares of the deceased shall not go to the survivors, but shall devolve on the testator's next of kin, according to the statute of distributions, as so much of the personal property undisposed of by the will. (*Bagwell* v. *Day*, 1 *P. Wms.*, 700; *Page* v. *Page*, 2 *P. Wms.*, 488; 1 *Jarman on Wills*, *p.* 306, *note.*)

Where real and personal property is directed to be divided equally among three individuals, and one of them dies in the lifetime of the testator, the share of such per-

son does not vest in the survivors but sinks into the residuum. (*Commonwealth* v. *Nate*, 1 *Ashmead*, 242; *Frazen* v. *Frazen*, 2 *Leigh*, 642; *Nelson* v. *Nelson*, 1 *Ired. Eq.*, 31.)

" Equally to be divided," goes to the quality of the estate and not to its limitation. The words create a tenancy in common. (*Jackson* v. *Laqueer*, 5 *Cowen*, 221.) And the share of any one dying before the testator lapses. (*Hart* v. *Marks*, 4 *Brad.*, 161.)

Where, however, the devise or bequest embraces a fluctuating class of persons who, by the rules of construction, are to be ascertained at the death of the testator, or at a subsequent period, the decease of any such persons during the testator's life will occasion no lapse or *hiatus* in the disposition, even though the devisees or legatees are made tenants in common; since members of the class antecedently dying are not actual objects of gift. Thus, if property be given simply to the children, or the brothers and sisters of A, equally to be divided between them, the entire gift will vest in any one child, brother or sister, or any larger number of these objects surviving the testator, without regard to previous deaths. (*Doe and Stewart* v. *Sheffield*, 13 *East.*, 526; 1 *Jarman on Wills*, *p.* 308.) And the rule is the same where the gift is to the children of a person actually dead at the date of the will. (*Viner* v. *Francis*, 2 *Bro. C. C.*, 658; *Same case*, 2 *Cox*, 190.)

Where a bequest is made to children as a class, the death of one, before the testator, does not cause a lapse; but all those answering the description of the class at the testator's death take the whole. (*Sterns* v. *Van Rensselaer*, 2 *Brad.*, 172.)

Where a legacy of £600 each was given to the three children of Mrs. Duval, and Mrs. Duval had four children, all born before date of will, the Master of the Rolls said, that had it been one sum to be divided, he might perhaps have ordered it to go among the four; but being £600 to each, he decided that each of the four children were enti-

tled to £600. (*Gairey* v. *Hibbert*, 19 *Vesey*, 125.) [This was, however, probably on the ground of mistake or accident in the drawing of the will.]

In the case of *Shiver* v. *Bishop*, 4 *Bro. C. C.*, 43, where a specific sum had been bequeathed among the six children of A, a seventh child, born after the bequest, but before the death of the testator, was not allowed to take.

If, however, the objects are to be ascertained at some period or event which might happen in the testator's lifetime, the subsequent decease of any member or members of the class in such lifetime would, in such case, according to the general notion, occasion the lapse of their shares, in the same manner as if the gift had been originally made in favor of the individuals answering the description. Thus, if the gift be to "the children of A, who shall be living at the decease of A, as tenants in common," and A happens to die in the testator's lifetime, leaving four children, B, C, D and E, one of whom dies in the testator's lifetime, the one-fourth share of such deceased child would lapse; precisely as if the gift had in the first instance been to B, C, D and E, as tenants in common. (*Jarman on Wills, p.* 309; *Allen* v. *Callon*, 2 *Vesey*, 289.)

Where a devise to several is not to them as a class, or joint tenants, but to several *nominatim*, and, in effect, as tenants in common, the gift is of a specific portion to each; and if that intended for either fails in consequence of his earlier decease, it descends to the heir. (*Hyatt* v. *Pugsley*, 23 *Barb.*, 285.) [In the case there was no residuary devisee to take the lapsed shares.]

The words, "All the children of my brother," though used as if to designate a class, were held to mean nephews and nieces, enumerated in another part of the will, and not to let in children born after the testator's death. (*Lorillard* v. *Coster*, 5 *Paige*, 172, 184, 217.)

My conclusion, then, being that the surviving four children of John B. Chapeau are each entitled to one-fifth of

the $12,000, and that the other fifth falls into the residuum, it is necessary to consider who takes the residuum.

A residuary legatee of personal estate takes not only what was undisposed of by the will, but also that which becomes undisposed of at the death of the testator, in consequence of the disappointment of his intentions. (*Van Kleeck* v. *Reformed Dutch Church*, 20 *Wend.*, 457; *James* v. *James*, 4 *Paige*, 115; *King* v. *Strong*, 9 *Paige*, 94; *Banks* v. *Phelan*, 4 *Barb.*, 80.)

When there is a general residuary clause in a will, if a legacy is revoked or becomes lapsed, it falls into the residuum, to be disposed of under the general clause. But if the residuum is given to several in common, and one of them dies, or the bequest is revoked as to one, his share goes to the next of kin. (*Floyd* v. *Baker*, 1 *Paige*, 480.)

The share in the residuum of the deceased daughter of John B. Chapeau passes to the next of kin of the testatrix.

The next question arising is upon the fourteenth clause of the will. It is in the following words :

"I desire, and it is my will, that my executors appropriate such sums, and in such manner as they may deem necessary and proper, to keep the lot belonging to me at Greenwood in good order."

The question submitted is as to the amount to be retained by the executor for this purpose. A reference must be had to an auditor to report on this question.

The only remaining question is as to the compensation of the executors nominated in the will, and the sums set apart for that compensation. The fifteenth clause of the will reads:

"I give and bequeath to my executors, hereinafter named, two thousand dollars apiece, for their attention to the settlement of my estate."

It appears that Stephen Cambreleng alone qualified and acted as executor under the will. William H. Aspinwall, the other person nominated, never took out letters

testamentary. As Aspinwall never became executor, he is entitled to no part of the $2,000 given to him conditionally by the will. These $2,000 fall into the residuum of the estate.