## *Ex parte* HORNBY.

THE testator, by his will, gave a legacy of five hundred dollars " to his nephew, *James* Hornby, son of his brother *Frederick*." It appearing that Frederick had no son named James, and that James had a son named Frederick; and the draughtsman of the will having testified that the testator directed the legacy to "James' son Frederick;" and other satisfactory evidence having been given of the intention of the testator at the time of making the will, showing the legacy was designed for Frederick the son of James,—*Held*, that the words of the clause in question might be transposed, and the mistake corrected so that the will might be read in conformity to the fact.

Generally, parol proof cannot be received to vary a will, where its meaning is plain and its provisions are susceptible of application. But evidence of all material facts is admissible, in aid of the exposition of a will; and it is competent, by means of extrinsic evidence, to place the court in the situation of the testator, so as to facilitate and ensure the ascertainment of his intention.

It is competent to give evidence of the testator's declarations at the time of making the will, where, as the will is written, there is no one to answer the precise description in the instrument.

In construing a will, words may be transposed, to effectuate the testator's intention as gathered from the will and from extrinsic proof, when, as the clause stands, it is inapplicable to an existing state of facts, but if transposed, it will be consistent and applicable

THE SURROGATE. Upon the final adjustment of the accounts of the executor, it becomes necessary to pass upon the bequest of five hundred dollars to one of the testator's nephews. The language is, "I give and bequeath to my nephew, *James* Hornby, son of my brother Frederick." It appears that the testator's brother *Frederick* had no son named *James*, while his brother *James* had a son named *Frederick*, so that, if the words are read as they stand, there is no legatee to answer the description; while, on the contrary, if they are transposed so as to read, "Frederick Hornby, son of my brother James," there will be a legatee correctly described. It is shown by the draughtsman of the will, that the testator directed this legacy to "James' son Frederick;" and that upon engrossing the instrument, error was made in making the gift to James, the son of Frederick. Other satisfactory evidence is also adduced of the declarations of the testator at the time of making or preparing the will, which shows that he designed the legacy for the son of his brother James, and that the description of the legatee is a sheer mistake. But can such evidence be received? The general rule is clear that parol proof cannot be used to vary a will, where its meaning is plain and the provisions are susceptible of application. But it often becomes a necessary and legitimate inquiry to ascertain who are the legatees intended by the testator, when, from misdescription or other circumstances, that point is left in uncertainty. For example, in the present case it is proper to ascertain whether the testator's brother Frederick had a son named James. If the fact had been so, the investigation would have terminated; and on finding a legatee to answer the description, no proof in contradiction of the will could have been received. But it turns out that there is no person to answer the description as it stands, while if the words are transposed a legatee is found.

It is undoubted, that evidence of all material facts is

admissible in aid of the exposition of a will; and it is competent, by means of extrinsic evidence, to place the court in the situation of the testator, so as to facilitate and ensure the ascertainment of his intention. But the more recent course of decision in the English cases, has tended to limit extrinsic proof to explanatory evidence of facts, and to exclude proof of the testator's intentions and declarations, except in the single instance of a description in the will unambiguous in its application to each of several subjects. (*Miller* vs. *Travers*, 8 *Bing.*, 244; *Doe* vs. *Needs*, 2 *M. & W.*, 129; *Hiscocks* vs. *Hiscocks*, 5 *M. & W.*, 363; *Wigram on Extrinsic Evidence*, 169.) I do not understand the decisions of our own courts to have proceeded to this extent, and think evidence of the testator's declarations at the time of making the will admissible where, as the will stands, there is no one to answer the precise description. (*Jackson* vs. *White*, 8 *J. R.*, 47; *Jackson* vs. *Sill*, 11 *J. R.*, 201; *Mann* vs. *Mann*, 14 *J. R.*, 1; *Doe* vs. *Roe*, 1 *Wend.*, 541; *Williams* vs. *Crary*, 4 *Wend.*, 443; 1 *John. Ch. R.*, 243; *Gardner* vs. *Heyer*, 2 *Paige*, 11.) The distinction that permits evidence of facts, but not of declarations, acts, and statements of the testator, is sustained in the English cases, and by Vice-Chancellor Wigram, in his learned treatise, with force and subtlety; but I am not aware that it has been adopted as the law of this State.

Aside of the proof afforded of the intentions of the testator in the present instance, the principle that in construing a will words may be transposed, to effectuate the testator's intention as gathered from the will and from existing facts proved extrinsically, comes in to aid the bequest now under consideration. (*Covenhoven* vs. *Shuler*, 2 *Paige*, 122.) In *Marshall* vs. *Hopkins*, 15 *East.*, 309, the devise was of a dwelling-house, with lands, in the parish of M. R., *then in the occupation of T. W.*, except one meadow, called Floodgate Meadow. It appeared that T. W. was not in possession of Floodgate Meadow, and it was held that the words,

" in occupation of T. W.," might be transferred and applied to the dwelling-house, " according to the fact, which would render the whole consistent." (*Jarman on Wills*, 438, *Doe d. Wolfe* vs. *Allcock*, 1 *B. & Ald.*, 137; *Bradwin* vs. *Harpur*, *Amb.*, 374.) The right to transpose where, from evidence, it appears that the clause of the will, as it stands, is inapplicable to an existing state of facts, but if transposed will be consistent and applicable, is sustained by these cases. The facts, as proved, show a mistake in the will in respect to the description of the legatee. The intention of the testator to give five hundred dollars to one of his nephews, is clear on the face of the will; and as a transposition has the effect of making the will accord with the facts, there would seem to be no substantial reason why that construction should not prevail, rather than defeat the design of the deceased, and have the legacy altogether fail. (*Garth* vs. *Meyrick*, 1 *Bro. C. C.*, 30; *Humphreys* vs. *Humphreys*, 2 *Cox*, 184; *Masters* vs. *Masters*, 1 *P. Wms.*, 421; *Smith* vs. *Carey*, 6 *Ves.*, 42; *Careless* vs. *Careless*, 1 *Meriv.*, 384.) I think, therefore, a decree should pass, directing the payment of this legacy to the testator's nephew Frederick, the son of his brother James.