### TILLOTSON *v.* RACE.

A will recited that the testator had given or paid to the children of his daughter Sabrina all he intended to give them, and taken their respective notes for the sum advanced to each; and it directed the executors to cancel the notes or surrender them to the signers, declaring them to be satisfied and discharged: *Held*, that this clause operated as a gift to one of the children of Sabrina, of a note executed by him for money not at the time intended as a gift, and which both the maker and payee expected to be paid.

It appearing by evidence, *aliunde*, that all the other notes were given as acknowledgments of money advanced by way of gift, while the note in suit was given for money lent, parol evidence is admissible of declarations by the testator before making his will, that this note was held by him simply as evidence of an advancement to the defendant.

APPEAL from the Supreme Court. Action on a note for $100, made by the defendant the 2d June, 1851, payable to Joseph Tillotson or bearer the 1st day of March then next. Joseph Tillotson, the payee, died in October, 1852. His executors had transferred the note to the plaintiff on account of a legacy in his favor in the will. The defence was, that the testator had discharged the note by a clause in his will, which was executed August 6, 1852, in these words: "I have heretofore actually given and paid to the children or heirs of my deceased daughter Sabrina all that I intend to give them, and I took their respective notes for the payment of the portion or sum by me advanced to each, which notes I now hold; and I direct my executors to either cancel and destroy said notes, which I declare to be fully paid, satisfied and discharged, and released, or else to surrender up said notes to the respective signers thereof, to be by them canceled." The defendant was one of the children of the testator's daughter Sabrina. Besides her, she left two sons and two other daughters; and her husband, William B. Race, also survived her. Joseph Tillotson left two sons surviving him, the plaintiff and his brother Silas, to whom he gave the bulk of his property, which was

considerable, and they were made executors. It appeared that two or three years before making his will, Joseph Tillotson had given to each of the children of Sabrina, except the defendant, $500, and had taken from each their note for that amount. Each of the notes contained on its face a clause to the effect that it was to apply on a certain legacy "willed" by Joseph Tillotson to the maker of the note. These notes remained in the testator's hands to the time of his death. The note in suit did not contain any special language.

The course of the trial was the following: The plaintiff proved his note and rested. The defendant showed that he was the son of Sabrina, and he gave in evidence the will of Joseph Tillotson, and proved that he was the holder of the note at the time of his death, and that this was the only note he held against the defendant; and the defendant rested. The plaintiff then gave in evidence the notes of the defendant's brothers and sisters, above mentioned; and proved by the widow of Joseph Tillotson, a lady about 80 years of age, that the note in suit was given for money lent by her husband to his grandson, the defendant, who applied for it, saying that he wanted to pay for some cows; and that about the time it became due, the defendant applied for further time to pay it, until the ensuing fall, which Joseph Tillotson assented to give. She also proved that, several years before, her husband had given the defendant $900 to assist him to pay for a farm. The plaintiff again rested. The defendant then proved by his father, and by his brothers and sisters, certain declarations which they had, as they swore, heard Joseph Tillotson make, all of which were received against the objection of the plaintiff's counsel, who excepted to the rulings by which the evidence was admitted. The questions upon this appeal relate principally to the competency of this evidence. The testimony was substantially as follows: The plaintiff's father swore, that in the spring of the year 1851, Joseph Tillotson told him that he had always intended to give the defendant $100 more than he had given him, to make it $1,000 in all; that he then had the amount on hand but had promised it to another person, but

should again have the amount for the defendant by the 1st June then ensuing. The witness swore that the defendant was named by Joseph Tillotson, who gave him his own christian name. One of the defendant's sisters swore that she had heard her grandfather say some years before, and before the will, that he intended to give the defendant $100 in addition to what he had given him. Another sister of the defendant, Mrs. Barsle, swore that she had heard her grandfather say the same thing in September, 1851, and that about two weeks before he died he told her that he had given the defendant another $100, and that he gave it at a time when the defendant came to pay his note. One of the defendant's brothers, Derick Race, swore to a conversation with Joseph Tillotson on the 25th May, 1852, when the latter told him that the defendant had called to pay his note of $100, but he told him to keep and use the money, for he did not intend to take it. The other brother swore to having heard Joseph Tillotson say to the defendant, in the fall of 1850, that he, the defendant, need not be uneasy about property, as he intended to help him more yet.

The plaintiff proved, without objection by the defendant's counsel, that at the time Joseph Tillotson's will was drawn, and also afterwards, he declared that the note of the defendant (now in suit) was to be paid, and that the other four notes of his brothers and sisters must be canceled, and that after the will was executed he had heard him express his surprise that the defendant had not come to pay the interest on his note.

The plaintiff's counsel desired the judge to charge that the proof that the note was given for a loan and not on an advancement, repelled any presumption that it was one of the notes referred to in the will; but he declined to give that instruction, and the plaintiff excepted. He charged that the will and note, with proof that the defendant was a son of the testator's daughter Sabrina, and that this was the only note the testator held against the defendant, would, in the absence of any other evidence, show, *prima facie*, that the note was one of those refer-

red to in the will. This was excepted to by the plaintiff's counsel.

The jury found for the defendant, and the judgment entered thereon was affirmed at a general term. The plaintiff appealed here.

*Benjamin F. Rexford,* for the appellant.

*Amasa J. Parker,* for the respondent.

DENIO, J. I am of opinion that the clause in the will of Joseph Tillotson, would operate as a gift of this note to the defendant, the maker of it, though it appeared that when given it was an ordinary business transaction, and was then expected to be paid both by the maker and the payee. The clause is not limited to notes which were given for moneys which were advanced as gifts at the time they were given. It is true, that four of the five notes against the children of the deceased daughter, which were found among the testator's papers, were of that character; but these would not have furnished any evidence of indebtedness against the makers, if the holder had not made any will. The amounts mentioned in them were gifts at the time they were advanced. But this clause is broad enough to extinguish notes which were, when given, common business paper. The terms used to express the consideration of the notes which were intended to be discharged, are—sums that have been given and paid and advanced—to these children. These words, or the two last of them, apply well enough to moneys advanced by way of loan. It is then expressed that notes had been given for these sums, and there is a strong implication that the notes, or some of them, were such as would have constituted a debt in the hands of the testator's representatives against the makers, if they had not been extinguished by the will. If all the notes had been given to secure actual loans made to the children, and there had been no contemplation, at the time, that they should be considered donations, there can be no doubt but that they would have all

been cut off by the will. The argument would have been irresistible, that the clause had nothing to operate upon except these notes. Now, the clause does not, on its face, relate to a part of the children, but to them all. The testator certainly supposed that he had the note of each one of these grandchildren. But if the note in question is not to be counted as one to which the clause applies, then he had the notes of only four of the five children of Sabrina. Therefore, to make the clause applicable in any way to the defendant, we must hold that this note was embraced in it. It is the only note the testator held against the defendant. This view is not changed by the evidence, that at the time the note became due it was treated by the testator and by the defendant as one which was to be paid. This was before the will was made, and it may very well be, that up to the time he sat down to draw his testament he intended to collect the note. If he then used language appropriate to make a gift of it to the defendant, or to direct its cancellation, it was extinguished when the will took effect by his death.

But concede that this view is not satisfactory. The doubt which the evidence gives rise to, is in the nature of a latent ambiguity. There is nothing obscure or equivocal on the face of the will. It is only by means of the proof that there are two classes of notes, namely, those which were given for money advanced by way of gift, and this one, which was given for money lent, that any question arises. The doubt is, whether the testator intended to make the same provision for two subjects apparently so dissimilar. That he intended to extinguish the notes which were, on their face, given as acknowledgments of donations, is plain; but whether he intended to embrace this note, which was given for money lent, may be considered doubtful. The rule in such cases is, that a doubt which has been raised by parol testimony may be resolved by the same kind of evidence. It was then competent, I think, to prove that the testator considered and treated, and talked of this note as one which was not to be paid, but which was held by him simply as the evidence of an advancement to the de-

fendant. It was admissible, for the purpose of applying the language of the clause in question. It shows what the testator considered to be embraced in the idea of notes taken for money given. The testimony of Derick Race, and that of Christina Bartle, so far as relates to the last conversation with the testator mentioned by her, would be admissible upon that principle. According to these witnesses, he declared that he had given the money mentioned in the note to the defendant, and did not intend to receive it from him. If this was so, he held the note for the same purposes for which he held the four notes against the other children of Mrs. Sabrina Race. The other declarations of the testator are admissible on a different ground, namely, by way of contradicting Mrs. Tillotson, the testator's widow. She understood the note to have been given for money lent. She may have been mistaken; but whether so or not, it was competent for the defendant to show that the transaction was of a different character. The note bore date the 2d June, 1852, and was for $100, which was shown to have been paid over by the testator to the defendant at that time. The testimony of the defendant's brother was, that the testator declared, the preceding spring, that he proposed to give the defendant $100 in addition to what he had already given him, and that he should be ready to advance it by the 1st June ensuing. In the absence of evidence that he accomplished this purpose by giving the defendant the additional $100 on any other occasion, this declaration would furnish evidence of some weight that the amount mentioned in the note was advanced by way of gift and to fulfill the purpose mentioned, and not, as Mrs. Tillotson supposed, as a loan. The other declarations proved by means of the questions which were objected to are of the same general nature as the last, though less precise. The only difficulty in holding the note to be embraced in the canceling clause of the will is, that it is (as alleged) shown to have been given to secure a loan. The note does not state, on its face, that it was given on such an occasion; but that is shown by extrinsic evidence, namely, the testimony of Mrs. Tillotson. But her testimony is not conclu-

sive. The declarations of the testator, both before and after the date, certainly tended to show that though it may have assumed the form of a loan, it was in truth a gift. Independently of the will, it would not have been competent to show that the note was an essentially different instrument from what it purports to be; but if the will be construed as limited to notes which had been given as evidence of gifts where no debt was created, we are immediately put upon the inquiry whether a particular note claimed to be embraced in the provision was of that character. In such an inquiry we are not, of course, confined to the terms of the writing, for the proposition assumes that language has been used, in a special sense, different from its ordinary acceptation. I think, therefore, that these exceptions are not well taken, and that the judgment is not erroneous.

All the judges concurred; COMSTOCK, Ch. J., and SELDEN, J., putting their judgment upon the construction of the will·

Judgment affirmed.