### KIMBALL *v.* CHAPPEL *et al.*

(*Supreme Court, Special Term, St. Lawrence County.* December, 1891.)

1. WILLS—CONSTRUCTION.

A will authorized the executor, in his discretion, and with the assent of the testator's wife, to convey certain land to a nephew when he was 25 years old, and to give him annual assistance from time to time not to exceed $1,000, up to his twenty-seventh year. By another provision, the wife was given, during her life-time, the net income of all the property. The wife, however, died before the testator, and the nephew was for many years the testator's housekeeper and sole companion. When the testator died, the nephew had passed his twenty-seventh year. *Held*, that the executor was entitled to act under the provision in favor of the nephew as if the wife's assent had never been required, and the fact that the testator per-

mitted this provision to remain in the will after the nephew had passed the ages therein specified, showed that he intended him to have the benefit of it free from any restriction as to the time when he should receive it.

2. SAME—DESCRIPTION OF LEGATEES.
   Where a bequest was made to the "First Presbyterian Church Society of the Village of Canton," and it appeared that there was no such society in the village, but that "The Trustees of the First Presbyterian Society in the Town of Canton" was the only Presbyterian society, the latter was entitled to take.

3. SAME—LAPSED LEGACIES.
   A legacy to a certain person and "his heirs" lapses by the death of such a person before the testator; "his heirs" being words of limitation and not of substitution.

4. SAME—LAPSED LEGACIES.
   A lapsed legacy passes by a general residuary clause.

5. SAME—BEQUEST TO A CLASS.
   A provision that the residue of an estate is to be divided among the testator's grand-nephews and grand-nieces does not include his nephews and nieces, although accompanied by a clause explaining that the provision is made so that each child of his deceased brothers and sisters may receive equal benefit.

Action by William H. Kimball, executor, against Frederic Chappel and others, to construe the will of Pliny Wright, deceased.

*Nelson L. Robinson*, for plaintiff. *Henry E. Seaver*, for defendant Chappel. *Frank N. Cleaveland*, guardian *ad litem*, for defendants John Elmer and others. *L. P. Hale*, for defendants Chamberlain and Hale. *George P. Wood* for defendant Luther Wales.

TAPPAN, J.   This is an action brought by the executor to obtain a construction of the last will and testament of Pliny Wright, late of Canton, deceased.   Said testator made his will May 13, 1883.   A copy of such will is set out in the complaint, and findings of fact herein.   He died October 17, 1890, then being eighty-five years of age, leaving real and personal property worth $16,000.   His wife and his brother Daniel, who are legatees named in the will, died before he did.   He left no children, nor the descendants of any children.   He left nephews and nieces, and grand-nephews and grand-nieces, all of whom have been made parties to this action.   Frederic Chappel and the Trustees of the First Presbyterian Society of the town of Canton are also parties to the action.   A question arises under the third provision of the will, which reads as follows:   "I authorize my executor and trustee, with the assent of my wife, Mary Ann Wright, to convey to my said wife's nephew Frederic Chappel a building lot in Canton, of lands now belonging to me, not to exceed an acre in extent, and to give him assistance from time to time, not to exceed $1,000; the land to be given him when he is twenty-five years old, and the money at any time up to his twenty-seventh year.   Said conveyances and advances to be discretionary in my trustee."   Frederic Chappel named in the will was twenty-eight years old April 11, 1891, and was more than twenty-seven years old at the time of the death of the testator.   It appeared upon the trial that for many years prior to the death of said testator said Frederic Chappel lived with him, as his sole companion, housekeeper, and servant, and cared for him with faithfulness and tenderness; that testator had, for many years, been feeble in body, of eccentric habits, and greatly dependent upon the services of said Chappel, who performed the most menial offices for him, and endured hardships and privations in his behalf, and who had testator's affection and good will down to the time of his death.   The death of testator's wife, before he died, does not affect the power of the executor to act under the provision of the will in favor of said Chappel.   By another provision of this will, the testator's wife is given, during her life, the net income of all the property.   Had she survived him, the provision in favor of Chappel could not have been carried into effect during her life without reducing her income.   Before the executor could do this, her assent was required; the provision was for her protection.

After her death, there was no further occasion for it, and the will should be construed as though such provision was not contained therein. By the provision in favor of Chappel the testator gives him nothing, but authorizes his executor to give, in his discretion. Chappel, therefore, has no vested right either in the land or in the money mentioned in this provision. The power given the executor by the will was clearly intended by the testator as a recognition of Chappel's services to him, and to recompense him therefor, and thereby to be of benefit to him. It may fairly be assumed that the quantity of land and the amount of money mentioned measured the benefit that the testator wished to confer upon him; and that the provisions in regard to the time when he should receive the benefit were prudent provisions, intended by the testator to guard him against improvidence or loss. There can be no question as to the construction that ought to be put upon the provision in regard to the land. It was not to be conveyed to him until he reached the age of twenty-five years, but might be, in the discretion of the executor, at any time thereafter. Reading all that is said in the provision in reference to the assistance that was contemplated, it is manifest that it was to be furnished in money; not all at the same time, but in various sums, at different times, as the executor might see would be most beneficial to Chappel, the aggregate not to exceed $1,000 in money.

It is fair to assume, considering the circumstances in connection with the language used, that the testator did not believe that it would be necessary to continue the restriction in regard to the payment of any amount remaining unpaid after Chappel reached the age of twenty-seven years; that his own experience and judgment would then be sufficient to protect him. The testator permitted this provision to remain in his will, thereby showing no desire to change it, and that circumstance of itself shows that he intended Chappel to have the benefit of the provision, relieved from any restriction as to the time when he should receive it, except the testator's discretion. This view seems to be in accordance with the decisions of the courts in other cases, somewhat analogous in principle to this case. *Delaney* v. *McGuire*, (Sup.) 14 N. Y. Supp. 809; *McCorn* v. *McCorn*, 100 N. Y. 511, 3 N. E. Rep. 480; *Briggs* v. *Carroll*, 117 N. Y. 288, 22 N. E. Rep. 1054; *Goebel* v. *Wolf*, 113 N. Y. 405, 21 N. E. Rep. 388. This view of the provision in favor of Chappel leads us to the conclusion that power remains in the executor in his discretion to convey the land, and pay the money to an amount not exceeding $1,000, and that the residuary legatees who would take this money in case the discretion was not exercised in favor of Chappel are entitled to have that discretion exercised within one year from the time the will was proved and letters testamentary issued. If the executor determines that he will not pay this $1,000 to Chappel, the same passes into the residuary portion of the estate, to be divided under the third subdivision of the sixth paragraph of the will. By the first subdivision of said sixth paragraph "$2,000 is to be paid to the First Presbyterian Church Society of the Village of Canton." Upon the trial it appeared that there is no religious corporation by that name in that village, but that "The Trustees of the First Presbyterian Society in the Town of Canton" were duly incorporated on July 29, 1825, under chapter 60 of the Laws of 1813, and since their incorporation have maintained and still maintain a place of worship in the village of Canton; that such corporation is the only religious corporation of the Presbyterian denomination in the village of Canton. It sufficiently appears that this corporation was intended to be the recipient of this bequest. It is sufficient that a devisee or legatee, whether a natural person or a corporation, is so defined as to be distinguished from every other person or corporation. A devise or bequest to a corporation need not state its corporate name; that such corporation was intended is sufficient. *Institute* v. *How's Ex'rs*, 10 N. Y. 84. This bequest should be paid to such corporation.

The legacy to "Daniel L. Wright and his heirs" lapsed by his death, notwithstanding the words "his heirs" are used. In such connection they are words of limitation, and not of substitution. *Bolles* v. *Bacon*, 3 Dem. Sur. 43-46, and cases cited; *In re Wells*, 113 N. Y. 396, 21 N. E. Rep. 137. Such legacy having lapsed, the same passes by the general residuary clause, to be distributed to the residuary legatees under the third subdivision of the sixth paragraph of the will. Dayt. Sur. 475, note, and cases there cited; *Gilman* v. *Gilman*, 111 N. Y. 265, 269, 18 N. E. Rep. 849; *In re Bonnet*, 46 Hun, 529, and cases there cited.

Questions have also arisen under the third subdivision of the sixth paragraph of said will, which reads: "The balance is to be divided among my grand-nephews and grand-nieces, (descendants of my brothers and sisters, except Daniel,) and the descendants of those now or at my death deceased, *per capita* and not *per stirpes*. I so dispose of my residuary property in order that each child of my deceased brothers and sisters, except the children of Daniel, may receive equal benefits. None of Daniel's descendants are to receive any share of my property except that coming through the devise and bequest to Daniel." The class to whom these bequests are made are named without any ambiguity or uncertainty; and that apparent ambiguity arises when the testator, further on, explains his reasons for what he has done, "that each child of my deceased brothers and sisters  *  *  *  may receive equal benefit." If the testator's grand-nephews and grand-nieces take under this provision, the children of his deceased brothers and sisters will not be benefited, except remotely, as their descendants receive such benefit. As the explanatory clause contains no language of gift or bequest, it cannot be construed as affecting the previous provision, which is clear and; unambiguous. The intention of the testator was clearly not to include nephews and nieces in the terms "grand-nephews" and "grand-nieces." The will is peculiarly drawn, but the intent can be clearly collected from an examination of all its provisions; and it is the duty of the court to give effect to that intent. *Purdy* v. *Hayt*, 92 N. Y. 454, and cases there cited; *Masterson* v. *Townshend*, (N. Y. App.) 25 N. E. Rep. 928. Costs are awarded to the plaintiff, to the defendant Chappel, and $25 is allowed to the guardian *ad litem* of the infant defendants. The case is difficult and extraordinary. Plaintiff is awarded $500 extra allowance, and the defendant Chappel $50, the same to be charged upon the estate of the deceased, and to be paid by the executor before the estate is distributed; and when so paid such estate is to be conveyed and distributed by said executor, according to the construction put upon said will as hereinabove stated. No costs allowed to any other party to the action.