---

In re TURNER'S WILL.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. WILLS (§ 106*)—INDEFINITENESS—EFFECT.

A will whereby an owner of six leaseholds, four of which were located on an avenue and two on a street, devised "one house" to one son, "one house" to another son, and "one house" to another son, and a designated house on the street to a daughter, and designated houses on the street and avenue to another daughter, was as to the sons so indefinite that it could not be carried out, for the court could not permit the sons to elect in the order named in the will, nor adjudge that they took as tenants in common.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 244; Dec. Dig. § 106.*]

2. WILLS (§ 490*)—AMBIGUITY—EXTRINSIC EVIDENCE.

The ambiguity in the will as to the devises to the sons was a patent ambiguity, not removable by extrinsic evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1048; Dec. Dig. § 490.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 81*)—INVALIDITY IN PART—EFFECT.

The invalidity of the devises to the sons rendered the whole will invalid because it was unjust to permit the daughters to take under the will, and then share under the statute of distribution in the balance of the property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 202; Dec. Dig. § 81.*]

Ingraham, P. J., and Miller, J., dissenting in part.

Appeal from Surrogate's Court, New York County.

Proceedings for the probate of the will of Matilda Turner, deceased, and for the construction of certain of its provisions. From a decree of the Surrogate's Court admitting to probate the will and construing certain of its provisions, Robert L. Turner and another appeal. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, MILLER, and DOWLING, JJ.

Theodore K. McCarthy and William H. Hamilton, for appellants. Charles Blandy, for respondent.

McLAUGHLIN, J. Matilda Turner died on the 5th of August, 1909. Three days prior thereto she executed a last will and testament, which, after a contest, was admitted to probate. At the time of her death and when the will was executed, she owned six leaseholds known as Nos. 325, 327, 329, and 331 Ninth avenue, and Nos. 400 and 402 West Twenty-Ninth street in the city of New York. She left her surviving three sons, two daughters, named in the will, and certain grandchildren, not named, children of a deceased son. She attempted to dispose of the six leaseholds in her will, of which the following is a copy:

New York, Aug. 2/1909.

IN THE NAME OF GOD AMEN.

I.

Matilda Turner bequeath
unto my sons & daughters
as follows in case of my death.
John Turner One house
George Turner One house
William L. Turner one house
Jennie S. Fox one house at
402 W. 29 St. N. Y. City and
Matilda D. Turner One house
400 W. 29 St. and one house
331–9th Ave., Half Contents of
house to Jennie S. Fox and
Matilda D. Turner.

                              her
                    Matilda  X  Turner.
                              mark

Witness:
          James W. Patterson, Com. of Deeds.
          Nellie Looney.
          Ella M. Wyatt.

The grandchildren opposed the probate upon various grounds, and two of them, by special guardian, have appealed from the decree ad-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mitting the will to probate and construing certain of its provisions.

I am of the opinion that the decree should be reversed and probate refused. The testatrix undoubtedly intended to give one leasehold to each son, but which one it is impossible from the will or anything which appeared before the surrogate to tell. The learned surrogate, relying upon the authority of Duckmanton v. Duckmanton, 5 Hurl. & Norman, 219, held that the sons John, George, and William were each entitled to a leasehold, and that they could elect in the order named in the will which one they would take. The Duckmanton Case is not an authority, because the question of election was not there really involved, inasmuch as two of the devisees had, in fact, determined the right of election by chance, and this was held to be binding. The three leaseholds not specifically given to the two daughters were of different values. To hold that the testatrix intended John to have first choice, George second, and William last is to base a judicial determination upon pure speculation, and nothing else. We are all agreed, as I understand it, that the decree cannot be sustained upon this ground. It is urged, however, that it may be sustained upon the ground that the testatrix intended to give the three leaseholds to the three sons, and that they take the same as tenants in common. To so hold, it seems to me, is not only speculative, but such result does violence to the language used in the will. The will gives John "one house," George "one house," and William "one house." It is true the three sons get the three houses, but "one house" to each is quite different from an undivided third interest in the three houses. If they took as tenants in common, an actual partition could not be made so that each would get "one house," because they are of different values and the testatrix desired, if language means anything, that each should have "one house." Words in a will amount to very little, providing the intent of the testator can be ascertained, and authorities are of very little value in ascertaining the intent in a given case. Here the testatrix clearly intended that each son should have "one house," but which one to each it is absolutely impossible to tell. The bequests to John, George, and William are therefore so indefinite they cannot be carried out. Asten v. Asten, [1894] 3 Chan. 260; Gallavan v. Gallavan, 57 App. Div. 320, 68 N. Y. Supp. 30; Harrington v. Abberton, 115 App. Div. 177, 100 N. Y. Supp. 681; Bingel v. Volz, 142 Ill. 214, 31 N. E. 13, 16 L. R. A. 321, 34 Am. St. Rep. 64; Lomax v. Lomax, 218 Ill. 629, 75 N. E. 1076, 6 L. R. A. (N. S.) 942.

The question raised in the Asten Case is quite similar to the one here presented. There the testator owned four houses in a given locality. He had four sons. By his will he attempted to give to each son, naming him, one house by the following description:

"All that newly built house, being No. ―――― Sudeley Place, Cotsfield Road, with the piece of ground in the rear thereof."

The four houses in Sudeley Place were all built by the testator himself at about the same time and shortly prior to the time the will was executed. The piece of ground in the rear of the houses referred to in the will was at the date thereof and at the testator's death fenced off from the adjoining land, but was not in any way divided or par-

titioned between the houses, and was still unbuilt upon. The four houses were not numbered at the date of the will. The testator had no other houses in Sudeley Place. It was held that the gifts failed for uncertainty. Romer, J., who delivered the opinion, said:

"The testator had four houses in Sudeley Place. * * * Now, on this will I cannot come to the conclusion that the testator intended to give one of these four houses to each son, without any selection on the part of the testator; on the contrary, it appears to me clear from the will that what the testator intended was to give a particular house to each son, and not to give any right of selection or election to any son. Owing, unfortunately, to the houses not being numbered at the date of the will and their description as given in the will being undistinguishable, I cannot tell from the will which house the testator intended to give any of the sons. * * * Under these circumstances, I cannot remedy the unfortunate state of things, but must declare the bequests void for uncertainty."

In the Lomax Case it was held that a provision in a will which located land devised in a section where the testator owned no land would not permit parol evidence of a mistake in the description, although he, in fact, owned land answering the description in another section, of which he did not dispose in the will. Not only this, but it will be observed there is nothing in this will by which the three leaseholds attempted to be disposed of can be identified. The case is therefore upon this point one of patent ambiguity, which cannot be removed by extrinsic evidence. Brown v. Quintard, 177 N. Y. 75, 69 N. E. 225. See, also, cases cited in Note 2, Lomax v. Lomax, 6 L. R. A. (N. S.) 942.

The attempted gifts to the three sons being void for indefiniteness, the gifts to the daughters must also fail. The general scheme of the testatrix was to give one leasehold to each of the three sons and one daughter, and two leaseholds to the other daughter. The scheme having failed, at least so far as the three sons are concerned, it would be unjust to hold that, despite this result, the two daughters might take under the will, and then share with the three brothers and the other next of kin under the statute of distribution. "A portion of a will should not be upheld when the result will work injustice to those interested" (Benedict v. Webb, 98 N. Y. 460), and, where it can be ascertained what was the general scheme of the testator, one of the main objects of which cannot be carried out, then the whole scheme falls, and no effect can be given to any part of it. Holmes v. Mead, 52 N. Y. 332; Rice v. Barrett, 102 N. Y. 161, 6 N. E. 898; Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917; Brown v. Quintard, supra.

If the foregoing view be correct, then it follows that the instrument offered for probate should have been declared void for uncertainty.

The decree must be reversed with costs to each party appearing on the appeal payable out of the estate, and the proceeding remitted to the surrogate for further action in accordance with the opinion of this court.

CLARKE and DOWLING, JJ., concur.

MILLER, J. (dissenting). Construing this instrument in the light of the surrounding circumstances, the situation of the testatrix and of

her family, and the nature of her estate, it is certain that she intended to dispose of her six leaseholds, giving three to her two daughters and three to her three sons. She intended to give particular houses to each of her daughters, for she specified which each was to have. She intended to give Nos. 325, 327, and 329 Ninth avenue to her three sons, for those were the only ones she had, except those given to the daughters. Plainly she did not intend to give a particular house to each of the sons, for in the gift to them she did not attempt to specify which each should have, as she was particular to do in the case of the daughters. There is nothing to indicate that she preferred one son to another, and certainly that will not be inferred from the order in which they were named, as it was doubtless a mere accident that one happened to be named ahead of another. For anything appearing to the contrary, it might well be assumed that she regarded them alike, and it is plain that she intended to treat them alike, for, not intending to give a particular house to either, she used precisely the same words with reference to each. Putting ourselves in the place of the testatrix, then we glean from the words of the will an intention to give the three leaseholds, Nos. 325, 327, and 329 Ninth avenue, to her three sons, to treat the three alike, and not to give a particular house to either. We can give effect to that intention only by holding that the sons take said three leaseholds as tenants in common. If I have correctly discerned the intention of the testatrix from the language of the will and such extrinsic evidence as the court is always entitled to consider in construing a will, that is the end of the discussion, because mere words and technical rules, aids to construction, cannot be suffered to defeat an intention thus ascertained.

We should have no difficulty in sustaining the will, if in place of the words, "John Turner one house George Turner one house William Turner one house," were substituted the words "John Turner, George Turner, William Turner three houses." To be sure, standing alone, there is a difference between the two expressions. But the expression used is not to be construed apart from its context. Neither the testatrix nor the draughtsman of the will perceived the distinction between "one house to each son" and an undivided one-third interest in three houses to each. The ignorance and unskillfulness of the draughtsman should make us the more astute in our search to discover the intention of the testatrix. Lytle v. Beveridge, 58 N. Y. 592. If we can glean from the body of the instrument, read in the light of the circumstances proper to be considered, an intent to give the three leaseholds, Nos. 325, 327, and 329 Ninth avenue to the three sons, to treat them alike and not to give a particular house to each, I fail to see why we cannot give effect to that intent the same as though the testatrix had expressed it in appropriate words. Certainly we should do that, unless precluded by controlling authority, and it is very difficult to find one will case which can be said to be controlling in another on the question of construction.

In Galavan v. Galavan, 57 App. Div. 320, 68 N. Y. Supp. 30, cited by the appellant, it was assumed that the devises in question were void and the question considered was whether the realty attempted to

be devised went to the residuary devisee or to the heirs at law. That is the only case in this state, cited by counsel or discovered in such research as I have been able to make, in which the provisions of the will resembled in any respect the will now in question. And it will be seen upon examination that, while the two provisions resemble each other in some respects, there are striking differences. It is unnecessary to cite the long line of cases in which the courts have changed or moulded language to carry out the testamentary intention. Many of them are cited in the note to section 477 of Schouler on Wills (3d Ed.).

It is quite true that there is a patent ambiguity in this will. The words "one house" standing alone tend to identify nothing. But Lord Bacon's canon cannot be applied in all strictness, certainly not in the construction of wills. Vide Jarman on Wills (5th Ed. Rand. & T.) p. 743; Schouler on Wills (3d Ed.) § 581. The statement made by Chancellor Kent in Mann v. Executors, 1 Johns. Ch. 231, 234, " * * * that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases: (1) Where there is a latent ambiguity, arising dehors the will, as to the person or subject meant to be described; and (2) to rebut a resulting trust"—must·be understood as referring only to evidence of declarations of. the testator and the like to explain his intention. It is one thing for the expositor of a will to put himself in the position of the testator for the. purpose of understanding the language used, and quite a different thing to admit evidence of the intention of the testator dehors the will. And, if any rule with respect to the construction of wills is well settled, it is that in construing wills the court is always entitled to know the surrounding circumstances, the situation of the testator, and of his family, and the nature and extent of his property. The testatrix had three houses aside from those specifically designated as intended for the daughters. She gave three to her three sons. Can there be a possibility of doubt that the three not specified were intended for the three sons? If she had had three houses on Ninth avenue and three houses somewhere else, I grant that it would be a case of patent ambiguity which could not be removed by extrinsic evidence to show what was intended. But surely, an ambiguity, which is removed the instant disclosure is made of the testator's property, should not be allowed to defeat a will.

While we have found no case in this state directly bearing on the one in hand, there are a number of English cases which tend to support the conclusion that this is a valid will. In the case of Duckmanton v. Duckmanton, 5 Hurl. & Norman, 219, relied upon by the learned surrogate, the words of the will were:

"From and after the death of my wife I give to John and his heirs one freehold close of land situate in Ridgway Field, and from and after the death of my wife I give to George one freehold close of land situate in Ridgway Field."

It was held that the devise was good. Plainly what was said on the question of election, or the manner in which the devisees chose to de-

termine the right of election, had no bearing whatever on the question of the validity of the devise.  In Tapely v. Eggleston, 12 L. R. Ch. Div. 683, the testator possessed three leasehold houses in K street and bequeathed "two houses in K street" in trust for P. for life.  Sir George Jessel held that P. was entitled to elect.  That case was de-cided upon the principle stated by Jarman that:

" * * * Where the gift comprises a definite portion of a larger quan-tity, it is not rendered nugatory by the omission of the testator to point out the specific part which is to form such portion, the devisees or legatee being in such case entitled to select. * * *"  Jarman on Wills (5th Ed. Rand. & T.) p. 652.

In Asten v. Asten, [1894] 3 Ch. 260, cited in the prevailing opinion, the testator indicated that he intended to give because he undertook to describe the devise to each by reference to the house number.  But even in that case Mr. Justice Romer stated that he had offered to grant an inquiry as to the testator's intention, but that the offer was refused.  And he said that, if it had not appeared that the testator intended to give a particular house to each son, he would have been prepared to hold upon the authority of Duckmanton v. Duckmanton and Tapely v. Eggleston that the sons were entitled to select in the order named.  In Schouler on Wills, the learned author refers to that case in a note to section 523 thus:

"Asten v. Asten, [1894] 3 Ch. 260, appears to go far in declaring void a de-vise of newly built houses, not numbered; for in case of a block of such houses separately devised it seems fair to treat such devisees as tenants in common of the whole block."

Not only is there an absence of language in this case indicating an intention to give a particular house to each son, but it is to be inferred from the whole will that the testatrix did not intend to give a par-ticular house to either son.  We do not think the doctrine of election is applicable, but the case is one in which it is not only fair, as said by Schouler, but in accordance with the testamentary intention, to treat the sons as tenants in common of the leaseholds Nos. 325, 327, and 329 Ninth avenue.

The decree of the surrogate should therefore be modified accord-ingly.

INGRAHAM, P. J., concurs.