toward the public performed, it is possible that the plaintiff might have been injured.

[3] But the only test we have to determine the facts is the verdict of the jury; and, although such verdict cannot possess mathematical precision, it must be accepted as the only method we have for determining the facts. The finding of the jury that the amount of damages was less than the value of the goods stolen is a matter of which the defendant cannot complain.

Judgment on the special verdict for $408.38 directed, and motion for new trial denied.

Judgment accordingly.

(72 Misc. Rep. 610.)

## In re HANSEN.

(Surrogate's Court, New York County. June, 1911.)

1. WILLS (§ 96*)—VALIDITY—FORM.

   The law does not require that a will should assume any particular form or be in language technically appropriate, it being sufficient that the instrument, however inartificial, discloses the intention of the maker respecting the posthumous destination of her property.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 228–231; Dec. Dig. § 96.*]

2. WILLS (§ 489*)—CONSTRUCTION—EVIDENCE—IDENTIFICATION OF LEGATEE.

   When the identification of the beneficiary of a will is alone in question, parol evidence is admissible to aid such identification.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1037–1046; Dec. Dig. § 489.*]

3. WILLS (§ 465*)—CONSTRUCTION—GENERAL RULES—PUNCTUATION.

   Where a will is illiterately framed, punctuation will not control its construction, and when wanting it may be supplied in order to separate words not clearly related in sequence.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 984; Dec. Dig. § 465.*]

4. WILLS (§ 467*)—CONSTRUCTION—PRECATORY WORDS.

   The expression by testatrix of a mere wish will not be construed as mandatory, if the legatees are at liberty to disregard it, and the testatrix anticipated that her desire might not be heeded.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 954, 986; Dec. Dig. § 467.*]

5. WILLS (§ 610*)—CONSTRUCTION—ESTATE CONVEYED—PERSONAL PROPERTY.

   Express words of gift are not necessary to create an absolute interest in personal property.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1379–1385; Dec. Dig. § 610.*]

6. WILLS (§ 477*)—CONSTRUCTION—INCORPORATING PAPERS BY REFERENCE.

   A letter to which a testatrix refers cannot be incorporated in the will by reference.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 998; Dec. Dig. § 477.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. WILLS (§ 493\*)—CONSTRUCTION—DESIGNATION OF BENEFICIARY.**

Where a will bequeaths property to testatrix's "brother," without designating which of two brothers she intended, the bequest is void for uncertainty.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1077; Dec. Dig. § 493.\*]

**8. WILLS (§ 81\*)—VALIDITY—EFFECT OF PARTIAL INVALIDITY.**

A part of a will only should not be upheld when it will work injustice or thwart the obvious intention of the testatrix.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.\*]

Judicial settlement of the account of Joseph Hansen as administrator with the will annexed of Margarethe Hinners.

Gustave Goodman, for petitioner.

Katz & Sommerich (Charles Trosk, of counsel), for Johannes Hinners, brother of deceased.

George C. De Lacy, for Henry Hinners, Sophie Knoop, and others, next of kin.

Frank T. Fitzgerald, special guardian for Edna Brumer, an infant.

FOWLER, S. This matter comes before the surrogate on the judicial settlement of the account of the administrator with the will annexed. The estate consists entirely of personal property. The amount to be distributed is $1,319.28.

It seems to be agreed by all the parties cited that a construction of the will of Margarethe Hinners is necessary before any decree on the accounting may be entered. All the parties in interest and next of kin are now before the court, as they were on the probate of the will.

It is not questioned by any of the parties to this accounting that the surrogate has the power to construe the will whenever such construction is incidental and necessary to a decree on an accounting actually in court. Burgess v. Marriott, 3 Curt. 424; Langdon v. Rooke, 1 Notes Cas. Ecc. 254, 259; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599. Indeed, all the parties in interest are here asking for a construction of the will and concede that it is necessary to a distribution. It certainly would appear that this was a proper case for a construction on the probate, under section 2624, Code of Civil Procedure, because here the validity of a disposition comes squarely before the surrogate.

The will now submitted to the surrogate is unusually inartificial, but it is for that reason only necessary to exercise the greater care, as a will of one inops consilii is presumed to appeal particularly to the consideration of a court of the surrogate. The will as probated is as follows:

                                        "N. York, Ocktob the 19th. 1908
"My dear Joe!
"There are 2000 Doller in the Bowery Bank an 50 Dollar in the Bank of Savings an is it my last wisch that you could agree with my Brother that ewery think will be keept together, but in case yous could not agree together, it is my last will that you get 500 Dollar from my Mony after my Brothers

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Dat is ewerything yours what belongs to me an have I written to my Brother that I Wisch that he leaves ewerything to you after his dat.

"Try that you get along together　　　[Signed]　Margarethe Hinners.

"This is to certify that Margarethe Hinners is of sound mind and wishes this to be her last will. In witness of which I sign my name.

　　　　　　　　　　　　　　　　"[Signed]　Charles Huber, M. D.

"Rudolph H. Bertram,
　　"411 E. 90th St., N. Y. City."

[1] As this will has been already probated, no question of its testamentary sufficiency or character is now before the surrogate. The law in its liberality does not require that a will should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however inartificial, discloses the intention of the maker respecting the posthumous destination of her property. If the will does not respond to this single requirement, it may be void for uncertainty. But no degree of technical informality, no confusion in the collocation of words, no grammatical or orthographical errors deter the judicial expositor from entering on the duty of eliciting from the contents of the instrument the intention of its author. 1 Jarman, Wills, 11, 315; Kalish v. Kalish, 166 N. Y. 378, 59 N. E. 917.

But as by the statute wills and testaments are required to be in writing, the construction must, if possible, be found in the instrument itself. The instrument under consideration is in the form of a letter to "My dear Joe." It is addressed to a definite person by one, if not in extremis, certainly in the exigency of a dangerous surgical operation. Time pressed, and the letter became a will with all the legal character of the most formal document. While proof, dehors the will, of testamentary intention is inadmissible (Reynolds v. Robinson, 82 N. Y. 103, 106, 37 Am. Rep. 555; Matter of Kennedy, 167 N. Y. 163, 170, 60 N. E. 442; Fries v. Osborn, 190 N. Y. 35, 39, 82 N. E. 716, 19 L. R. A. [N. S.] 457), I take it that the circumstances attending the execution of this letter as a will are to be regarded as a part of the res gestæ and ought to be admissible. See Lord Cairns, in Charter v. Charter, L. R. (7 H. L.) 377; Tillotson v. Race, 22 N. Y. 122, 128. But I will not rely on that point; nor will I consider whether or not the prior declarations of testatrix tending to identify "Joe" are to be held admissible under the peculiar circumstances of this particular case. In fact, I will disregard proof of such declaration, as there is sufficient without them.

[2] On the face of the will in question there is something left to be explained, and evidence of some sort, if of an explanatory character, is clearly admissible in all reason. Fries v. Osborn, 190 N. Y. 39, 82 N. E. 716, 19 L. R. A. (N. S.) 457. Whenever the identification of the person intended as the recipient of the testator's bounty is alone in question, the law reasonably provides a way for ascertaining the person intended, according to the maxim, "Id certum est quod certum reddi potest." In such an effort parol evidence is to some extent admissible for the purpose of aiding in the identification of the persons intended by the testatrix. Patch v. White, 117 U. S. 217, 6 Sup. Ct. 617, 710, 29 L. Ed. 860; Lefevre v. Lefevre, 59 N. Y. 434, 440, 443;

New York Instn. for Blind v. How, 10 N. Y. 84, 88; Kimball v. Chappell, 18 N. Y. Supp. 30; Hart v. Marks, 4 Bradf. Sur. 161; Reynolds v. Robinson, 82 N. Y. 103, 107; Matter of Dickinson, 56 Misc. Rep. 232, 107 N. Y. Supp. 386. In Masters v. Masters, 1 P. Wms. 425, there was a legacy to a "Mrs. Sawyer," and as testator appeared to know no one of that name it was referred to a master to inquire, and the legacy was given to a "Mrs. Swapper."

Here before me is no question of ambiguity, for then the rule may be different. Two persons, both bearing the name of "Joe," are not before me claiming the legacy. Here is simply a question of the identification of the "My dear Joe" intended by testatrix. On this point I entertain no doubt. The "My dear Joe" intended by testatrix is unquestionably Joseph Hansen, her old and intimate friend. He it was who visited her thrice in each week for sixteen years. The testatrix brought this Mr. Joe Hansen to the surgeon who operated on her, and she stated to this surgeon that she knew Joseph Hansen for "Many, many years very intimately." This was the truth. Irrespective of the declarations of testatrix, it is very clear from competent testimony, and is so found, that the "My dear Joe" of the will is Mr. Joseph Hansen and no other.

The nature of the interest bequeathed to Joseph Hansen will be next considered. It is reasonably clear that a construction by which Joseph Hansen is bequeathed $500 is agreeable to all the parties in court. The attorneys for Johannes Hinners, the brother of the testatrix, concede that "Joe," who is found to be Joseph Hansen, is entitled to a legacy of $500. The special guardian for Edna Brummer makes no contention against a construction which gives this legacy to Joseph Hansen. It is not seriously disputed by the other next of kin, who are all represented by counsel, that Joseph Hansen by this will is entitled to receive a legacy of $500. Indeed, it is expressly conceded in the brief in behalf of the other next of kin that such would be a "fair and proper construction" of this will. Thus a construction of the will which gives to Joseph Hansen the sum of $500 seems to be conceded as a proper one by all the parties before the court. But, as the special guardian is in no position to consent, the surrogate must take the responsibility of determining in the first instance whether or not there is in the will a bequest of $500 to Joseph Hansen.

[3] A construction which gives $500 to Joseph Hansen would be obviously the proper one if the will were punctuated and contained a full stop or period after the word "mony" in the words "it is my last will that you get 500 Dollar from my Mony." It has been held in cases of authority on the construction of wills that it is not from the punctuation that the sense must be collected, and that punctuation will not be regarded. Sanford v. Raikes, 1 Mer. 651; Arcularius v. Geisenhainer, 3 Bradf. Sur. 64, 76; Lewisohn v. Henry, 92 App. Div. 532, 538, 539, 87 N. Y. Supp. 325, affirmed 179 N. Y. 352, 72 N. E. 239; Kinkele v. Wilson, 151 N. Y. 269, 276, 277, 45 N. E. 869.

It would be absurd to attempt a judicial construction of such an illiterate writing as this in the light of rules relating to the punctuation of documents framed in a literary or precise manner. It is obvious

that the want of punctuation in such a testament ought to be immaterial. Punctuation will, however, often be supplied by construction in order to separate words which are not clearly related in sequence when a testament is illiterate and inartificial. If we place a period after the word "mony" and disregard the hortatory or precatory preface of the will we have this sentence left: "It is my last will that you [Joe] get 500 Dollar from my Mony." Standing alone the meaning of this sentence just quoted is as clear as the noonday, and no forced construction is necessary. The accuracy of such conclusion would be incontestable if it were not for the preamble of the will. Let us then glance at the prefatory part of the instrument before the surrogate.

[4] It seems to the surrogate that all the words preceding the bequest of $500 are either descriptive or hortatory and to be disregarded altogether in construction. Matter of Murray, 124 App. Div. 548, 108 N. Y. Supp. 1047; Post v. Moore, 181 N. Y. 15, 73 N. E. 482, 106 Am. St. Rep. 495. That such a canon is the true one to apply in this cause is apparent from the words "but in case yous could not agree together." These words just quoted clearly disclose that the testatrix anticipated that her desire might not be heeded by her intended beneficiaries. Now, the expression in a will of a mere wish of a testatrix is never to be construed as mandatory if the legatees are at liberty to disregard it. It is very clear to me that all the early part of the will is therefore hortatory, or the mere expression of a wish, and it is to be disregarded in construction. The will in that event must be construed to mean that Joseph Hansen is given a legacy of $500, payable presently.

[5] Express words of gift are not necessary to create an absolute interest in personal property. The words, "It is my last will that you get 500 Dollar from my Mony," are sufficient to carry an absolute interest to Joseph Hansen in so much money, and I so hold.

The paper probated as a will and now to be construed by the surrogate contains a further provision as follows:

"After my Brothers Dat (death) is ewerything yours what belongs to me an (and) have I written to my Brother that I Wisch (wish) that he leaves. ewerything to you after his dat (death)."

What is the true construction of this clause of the will? Had the testatrix left one brother her surviving, it would be possible to hold that by implication this only brother, clearly described because of that fact, took a life interest in the residue over $500 to Joe; but the testatrix left two brothers her surviving. If she intended only one of them to take, which of the two was it?

[6] Under the present law of this state, the letter to which the testatrix refers cannot be incorporated in the will by cross-reference. Matter of Emmons, 110 App. Div. 701, 96 N. Y. Supp. 506. The will as probated must explain itself. Under the statute of wills now in force it is frequently said that the true construction and the intent of the testatrix must be found within the four corners of the will itself. It is apparent that the bequest to the brother, if it is in the singular, in view of the fact that the testatrix left more than one brother, presents

a difficulty. Matter of Turner, 142 App. Div. 645, 127 N. Y. Supp. 641; Eidt v. Eidt, 142 App. Div. 733, 127 N. Y. Supp. 680.

Similar wills have been construed in England. In Dowset v. Sweet, Amb. 175, a bequest to a son was held void because there was more than one son. S. p. Doe d. Hayter v. Joinville, 3 East, 175; Matter of Stephenson, 1897, 1 Ch. 75; Drake v. Drake, 8 H. L. Cas. 172, affirming Romilly, M. R., 25 Beav. 642.

[7] It is said that in such a case Mr. Jarman is, however, of the opinion that parol evidence would be admissible to show which of the two brothers was intended. See Jarman, Wills (6th London Ed.) 522, 523. Mr. Jarman is an undoubted authority, but the surrogate prefers not to enter on this debatable point at this time, as the entire will, other than the bequest to Joseph Hansen of $500, seems open to the charge of uncertainty as regards both the description of the legatee and the quantum of interest intended to be given. Under the pretense of construction the surrogate cannot make a will for testatrix. It is unnecessary for that reason to undertake the consideration of the modern decisions touching those vague "patent" and "latent" ambiguities cited to me. These terms are now generally conceded to have been inventions by Lord Bacon, and in modern times to be too often misapplied and rarely understood. It is questioned by very distinguished lawyers whether Bacon's distinction has any real foundation in reason or fact. It is extremely doubtful how far extrinsic evidence should be received in this cause. Matter of Hornby, 2 Bradf. Sur. 420, 422. Certainly what the nature of the ambiguity is need not be considered. The bequest to the brother will be adjudged void for *uncertainty* only.

It is next suggested that, this being true, it accelerates the "remainder," and that, as the particular estate supporting the remainder fails, the remainder vests immediately in possession in the remainderman, and Joseph Hansen takes all. This claim, of course, assumes that the brother intended was to take a life interest only. If probed to the bottom this claim, then, presents one of the few points remaining unsettled since the Revised Statutes, for in this state limitations of future interests in personalty are governed by the statute regulating future estates in real property. The final solution of such a question would demand the fullest exposition on the part of counsel, and it could only be determined by the final decision of the court of last resort. To accord such a construction to this will is to invite the dissipation of this small property.

It has been just stated that limitations of future interests in personal property are governed by the statute regulating future estates in real property. The statute on this point is express and very familiar. 1 R. S. 773, §§ 1, 2; Laws of 1897, c. 417, now Real Property Law (Consol. Laws 1909, c. 50) § 11.

Life estates or (to speak more accurately, as personal property is never held for an estate) life interests in personal property have been recognized only in comparatively modern times. Van Horne v. Campbell, 100 N. Y. 305, 3 N. E. 316, 771, 53 Am. Rep. 166. At common law a life interest in personalty was ultimately called "an interest

analogous to an estate for life in lands," and on such life interests remainders came to be well limited. Consequently, in deference to the modern usage last indicated, as life estates or life interests never exhaust the quantum of ownership, which the term "fee simple" in respect of real property or "absolute ownership" in respect of personalty implies, there always exists in reference to life estates limited in personal property a "reversion" or a "remainder." Clark v. Cammann, 14 App. Div. 127, 133, 43 N. Y. Supp. 575; Mills v. Husson, 140 N. Y. 99, 35 N. E. 422. A reversion and a vested remainder in fee simple are, and always have been, convertible terms. 2 Preston, Abst. of Title, 88.

Whether a remainder is now well limited on a life estate which fails is, as has been stated, the open question since the Revised Statutes. See Schettler v. Smith, 41 N. Y. 347; Cochrane v. Schell, 140 N. Y. 526, 35 N. E. 971. Cf. Kalish v. Kalish, 166 N. Y. 378, 379, 59 N. E. 917; Williams v. Jones, 166 N. Y. 536, 537, 60 N. E. 240. Of course, if the future interest is not a "remainder," but an executory limitation, it may take effect even if the particular estate be void. But over so small a property it is hardly necessary to resort to a construction which invites an extended consideration of costly problems. The surrogate has considered this point only out of deference to the counsel who advanced it in behalf of Joseph Hansen. It is not, however, clear that a life estate was intended to be given to the brother. In any event, I am not disposed to give such a construction to this will as will carry all to Joseph Hansen, for it is apparent that the testatrix intended that some one of her blood should take some interest in her property.

[8] A part of a will should not be upheld when it will work injustice (Benedict v. Webb, 98 N. Y. 466) or thwart the obvious intention of testatrix.

It seems to the surrogate that the will of Margarethe Hinners must be construed to give a legacy of $500, payable presently to Joseph Hansen, and that in other respects such will is void for uncertainty. In this event the next of kin of Margarethe Hinners, as indicated by the statute of distributions, will be entitled to the residuum as in case of intestacy.

Decreed accordingly.