(75 Misc. Rep. 441.)

### In re GRIFFIN et al.

(Surrogate's Court, New York County. January, 1912.)

WILLS (§ 612*)—CONSTRUCTION—NATURE OF ESTATE.

Where an absolute bequest of money to a daughter in a holographic will is accompanied by a provision that on her death the money is to revert to the sons of the testatrix in equal shares, the daughter takes a life estate and the sons vested remainders.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1387–1392, 1608; Dec. Dig. § 612.*]

In the matter of the judicial settlement of the accounts of Francis H. Griffin and Norman Stuart Griffin, Executors. Decree rendered.

W. H. Van Steenbergh, for executors.

Howard Campbell & Son, for Fuller.

FOWLER, S. The construction or interpretation of the holographic will of Mrs. Katherine L. Griffin, deceased, arises on the settlement of the executors' account. The particular clause presented to the surrogate for construction, or interpretation, is as follows:

"I give and bequeath to my daughter Grace Griffin Fuller, wife of Robert King Fuller of Springfield, Massachusetts, the sum of $10,000—After her death I wish this money to revert to my sons, Francis Hoyt Griffin and Norman Stuart Griffin, to be equally divided between them."

The first position urged on behalf of Mrs. Fuller is that she takes the $10,000 in full property and dominion; or, in other words, by analogy to the law of real property, in fee simple absolute. The executors, on the other hand, claim that Mrs. Fuller's interest in the $10,000 is for her own life only.

In the revision of the rules regulating future or contingent interests in personal property, the revisers of the Revised Statutes, by a singular inversion of the historical processes of legal development, made limitations of future or contingent interests in personal property subject to the rules prescribed in relation to future estates in real property. 1 R. S. 773, § 2, now Personal Property Law, § 11 (Consol. Laws 1909, c. 41). Thus the terminology of the law of real property in respect of the quantum of interests therein was transferred in this state to the law regulating future successions to personalty. The development of future interests in personalty at common law is well set forth in Van Horne v. Campbell, 100 N. Y. 305, 306, 3 N. E. 316, 771, 53 Am. Rep. 166. I had occasion to allude to it in a recent case. Matter of Hansen, 72 Misc. Rep. 610, 617, 132 N. Y. Supp. 257. It is the rules regulating the creation and the limitation of such interests which are now determined by the real property Code of this state. Since the Revised Statutes judicial decisions relative to the quantum of both future estates and future interests are generally relevant to either species of property. The ultimate consequence of these changes is that since 1830 the law of this state regulating our domestic limitations of property receives little illustration from either the common law or the jurisprudence of

most other states. It is nevertheless to be noted that the rules of interpretation do yet differ in some few respects according to the nature of the property affected by the limitation.

It, however, remains a rule of construction, as it was at the common law, that, where the quantum of the estate or interest is created by a last will and testament, the language of the limitation need be less precise and technical than when such limitation is contained in a deed or other conveyance inter vivos. Cruise, Dig. tit. 38, c. 1, § 1; Fox v. Phelps, 17 Wend. 393; Jennings v. Conboy, 73 N. Y. 234. There are other rules of construction applicable to holographic wills. If the will is a holograph and drawn by a layman, not skilled in legal phraseology, the technical construction of a limitation is subordinate to the intent of testator, as collected from the will itself. Lytle v. Beveridge, 58 N. Y. 592; Ritch v. Hawxhurst, 114 N. Y. 512, 515, 21 N. E. 1009; Leggett v. Firth, 132 N. Y. 10, 29 N. E. 950; Matter of McClure, 136 N. Y. 238, 241, 32 N. E. 758. The intention of the testator may be collected from the whole will, unless it is obvious that the intent should be drawn from an isolated and detached clause, completely independent (logically and grammatically) of the rest of the text of the will. Wager v. Wager, 96 N. Y. 164; Freeman v. Coit, 96 N. Y. 63.

Formalism, or the application of rigid rules of interpretation to inartificial wills, while offering both a convenient and an easy solution, does not always solve rightly the difficulties apparent in particular wills. It was extremely well said in a late English case (Matter of Russell, 52 L. T. 559):

"In cases * * * which depend upon the construction to be given to particular words in particular instruments, authority is of very little use in construing another gift in what is an unskillfully drawn will."

The same thing, in substance, is said again in Gravenor v. Watkins, L. R., 6 C. P. 500, 504:

"It is extremely difficult to construe one will by the light of decisions upon other wills framed in different language. The court must in each case endeavor to ascertain the meaning of the testator from the language he has used."

This principle our own courts often paraphrase by the statement that "no will has a brother."

I am asked to apply to this will before me a very common rule of judicial interpretation, sometimes applied with accuracy, and sometimes, I fear, misapplied. The existence and the content of the rule itself no one doubts. The rule is this:

"That, when an interest is given or an estate conveyed in one clause of a will, it cannot be cut down or taken away by raising a doubt from other clauses, but only by express words or by clear and undoubted implication." Freeman v. Coit, 96 N. Y. 68; Clay v. Wood, 153 N. Y. 134, 47 N. E. 274; Banzer v. Banzer, 156 N. Y. 429, 51 N. E. 291; Bennett v. McLaughlin, 125 App. Div. 172, 109 N. Y. Supp. 63; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388; Mee v. Gordon, 187 N. Y. 400, 80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172; Smith v. Dugan, 145 App. Div. 877, 130 N. Y. Supp. 649.

The rule itself is accurate enough, but I conceive that it does not apply to this will before me.

Another rule of interpretation of common application to limitations of particular estates and remainders is that the time to determine survivorship must be clearly fixed at the termination of the precedent or particular estate, or it will be presumed to refer to the death of the testator himself. Matter of Geissler, 72 App. Div. 85, 76 N. Y. Supp. 100; Embury v. Sheldon, 68 N. Y. 227; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388. That this also is a sound rule of interpretation, long honored by consistent application, must be conceded. But it is a petitio principii to affirm that it applies to this will.

It should not be forgotten at this point that among common lawyers there are two schools of interpretation of legal documents; one favors the meaning of the words expressed to the full extent that such words will bear, and to that extent only. The other school favors the intention of the party, rather than the connotation of the words, as the regulating principle of interpretation. As the object of interpretation is to supply the deficiency of written expression, grammatical interpretation will not do this. In England Lord Denman (Rickman v. Carstairs, 5 B. & Ad. 663) and Lord Wensleydale (Grey v. Pearson, 6 H. L. Cas. 106) are exponents of the literal or grammatical school of interpretation, while Sugden, Lord St. Leonards, stands for the logical school. Sugden thought that the words of any will might be modified according to the intention of the party or testator. The corollary of Sugden's position is that much extrinsic evidence of intention may be available in aid of interpretation. This availability the grammatical school deny. But the difference in the schools does not stop with the admissibility of extrinsic evidence. The liberal or logical method favors every means by which the intention may be ascertained. It is well known that Mr. Hawkins (2 Jurid. Society Papers, 298) accuses Mr. Wigram of confusing in his treatise on "Extrinsic Evidence in the Interpretation of Wills" the distinction just pointed out. The decisions of the courts which proceed on the principles of both schools naturally disclose some inconsistency. If the principle of adhering literally to the meaning of words were carried out to the fullest extent, no business could ever be done. "Sermo et familiaris et quotidianus non cohaerebit, si verba inter nos non aucupabimur." The harshest criticism of the literal school perhaps ever made is that by the English civilian, Phillimore (Maxims, p. 338).

But I take it, without regard to the applicability of particular juristic methods of interpretation, that a certain liberality is, in any event, to be applied to the will before me, because it is an inartificial holograph. Lay testators who draw their own wills are by our law presumed to intend that their bequests shall not be construed with artificial strictness. This is a reasonable and just exception to the rules relating to the technicalities of professional language in wills not holographic. Technical language there receives a technical construction, because testator is presumed to have employed it knowingly.

The testamentary bequest to Mrs. Fuller of $10,000, it will be noticed, is coupled almost in the same sentence with a provision "that after her death it is to revert to my sons." It would be unjust in

my judgment for the surrogate to hold that this testatrix meant nothing by such a qualification of the bequest to Mrs. Fuller. Testatrix put the qualification itself in the same line with the bequest to Mrs. Fuller and without, perhaps, taking up her pen from the line framing such bequest. To speak of the bequest to Mrs. Fuller as a gift begs the question. It is now regarded as highly doubtful whether any testamentary succession is in law to be regarded as a "gift." It is a figure of speech only. Otherwise why do we in law contradistinguish a donatio causa mortis from a bequest? A bequest is best defined as a legalized succession permitted to depend on the intent of the testator, as expressed (with more or less accuracy) in an authenticated document called a will. In a will there is no donor, no delivery, no gift. The will is in law a mere technical appointment to uses by virtue of a statute confirming veniam testandi.

That this testatrix, by the existing law of testamentary succession, did not intend that her sons should have any interest in the $10,000 in question, is to me illogical, if we recur to the langage of the will itself: "After her death" (Mrs. Fuller's) "I wish this money to revert to my sons," Francis and Norman. To hold that the testatrix did not intend Francis and Norman to take something at Mrs. Fuller's death would, I believe, astonish Mrs. Griffin, if she could come to life. But we are not in this cause without precedents, more or less illustrative of the language of this will. Unfortunately they lack uniformity. In Matter of Russell, 53 L. J. Ch. 400, Mr. Justice Kay held that the following clause: "I give to my sister Mary Hedwith the sum of £1000 sterling, the same to become the property, at her death, of her heirs"—gave Mary Hedwith the £1,000 absolutely, and the learned justice applied the "not cutting down" rule of construction which I have referred to above. But the Court of Appeals would have none of it, and they say (52 L. T. 559):

"If you were to ask any one except a lawyer what was the meaning of the gift, he would answer it was a gift to the testator's sister for life, and after her death to the persons who could correctly call themselves her heirs."

They consequently reversed Mr. Justice Kay, and I believe they acted correctly. The testatrix whose will is before me was not a lawyer, and she said what she meant in legal intention.

There are other English decisions looking the same way. Gravenor v. Watkins, L. R. (6 C. P.) 500, 505, is an example. There a bequest or devise apparently absolute is followed by something in the will indicating it is not to be absolute but qualified, and where the courts did not disregard the qualification, as I am here asked to do by Mrs. Fuller. But in Matter of Percy (Percy v. Percy, 24 Ch. Div. 616) there was a bequest to testator's wife of £10,000, "afterwards to go to the understated residuary legatee, Edward," and the Vice Chancellor held the widow was entitled absolutely. It seems to the surrogate that in principle Percy v. Percy does not differ from Matter of Russell, supra, and that it should have been decided in conformity with the decision of the Court of Appeals in Matter of Russell. While none of these English adjudications are of any au-

thority in this state, one seems to me a reasonable and the other an unreasonable interpretation of a will.

I find no precise adjudication on this will before me in our own state; but I do find adjudications which are not content to ignore expressed qualifications of otherwise absolute bequests. In Matter of McClure, 136 N. Y. 238, 32 N. E. 758, the Court of Appeals say:

"The interpretation of the will presents to us, therefore, the alternative of cutting off provisions repugnant to an absolute ownership, or allowing them to qualify the estate primarily given."

And in that case they chose the latter course. The same course was followed in Matter of Whitney, 69 Misc. Rep. 131, 124 N. Y. Supp. 909, and it is very much in point here. In Freeman v. Coit, 96 N. Y. 67, Andrews, J., admitted as an established principle of interpretation, "It is undoubtedly true that an interest given in one clause of a will, in terms denoting an absolute estate, may, by force of a subsequent clause, be qualified by a limitation over in a certain event," although this truth was held not applicable to that case. But in Mee v. Gordon, 187 N. Y. 400, 80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172, the principle was not only recognized, but applied, as it was in Kurtz v. Wiechmann, 75 App. Div. 26, 77 N. Y. Supp. 964. In Campbell v. Beaumont, 91 N. Y. 468, 469, this principle was recognized and not applied. But Campbell v. Beaumont and Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950, belong to a class of cases relating to remainders of a possibility after a fee simple, and they are only important in that connection and under our peculiar property statutes tolerating such remainders after a fee simple or a life estate with a power appendant to consume which amounts to a fee simple.

I do not think it necessary on this will, for the reasons stated, to resort to the law of precatory trusts in order to support the obvious intention of a limitation over. Implications of precatory trusts, unless clearly imperative, are now regarded as merely hortatory expressions, or mere expressions of a wish, and to be disregarded when the bequest is absolute in terms. Bollentin v. Bollentin, 57 Misc. Rep. 250, 109 N. Y. Supp. 212; Matter of Copeland, 38 Misc. Rep. 402, 77 N. Y. Supp. 931; Foose v. Whitmore, 82 N. Y. 405, 37 Am. Rep. 572; Bennett v. McLaughlin, 125 App. Div. 172, 109 N. Y. Supp. 63; Post v. Moore, 181 N. Y. 15, 19, 73 N. E. 482, 106 Am. St. Rep. 495, 2 Ann. Cas. 591.

For the reasons I have already stated at length, my interpretation of the second clause of the will of Mrs. Griffin is that her daughter, Mrs. Fuller, takes the $10,000 for her own life only, with remainder to the two sons of testatrix named by her and living at her decease. Had the remaindermen not been the next of kin of Mrs. Griffin, I should have some doubt as to the accuracy of my conclusion under the various adjudications. Such remainders are vested remainders, and all such interests in the $10,000 are legal, and not equitable. In my opinion this conclusion will suffice for the purposes of the accounting, and will enable the executors to complete it and to distribute.

I do not feel it incumbent on me to grant the request of the parties, and to direct the executors further at this time. As the interests are legal, the executors may, if they choose, pay the $10,000 to the life tenant, in which case she becomes a trustee for the remaindermen. In some such cases the court will exact security. If the life tenant is a nonresident, she is not ordinarily entitled to possession. But, as no argument has been heard on these points, the matter better be put again on my calendar for a rehearing on these points only, unless the parties can agree among themselves, as I hope they may be able to do. Bonds could be bought and lodged with a trust company for Mrs. Fuller's life. Various other solutions will be apparent to the parties themselves.

Decreed accordingly.