the original shares, would make a total closely approximating the value of the original shares before the declaration of the dividends. The declaration of a stock dividend did not add anything to the intrinsic value of the stock of the company upon which the dividend was declared. It was merely a distribution of accumulated surplus, and the advantage to the stockholders consisted principally in the fact that the increased number of shares of stock would necessitate the annual distribution of surplus in the form of dividends instead of the accumulation of such surplus by the company. The 166 shares held by the testatrix at the time she executed the will had, because of the surplus accumulated at that time, a potential value equal to the actual value of the 638 shares owned by her at the time of her death. None of these 638 shares was purchased by her after the execution of her will. They all resulted from the distribution of the surplus accumulated by the company, and were derived from the original ownership of the 166 shares.

The decision in Brundage v. Brundage, 60 N. Y. 544, is distinguishable from the matter under consideration in the important particular that the bequest considered by the court in the Brundage Case was a general bequest and not a specific one. I have had occasion to consider a similar question in the Matter of Leavitt, 86 Misc. Rep. 609, 148 N. Y. Supp. 758, and am inclined to think that the reasons given for the conclusion at which I arrived in that matter apply with equal force and relevancy to the matter now under consideration.

I will therefore hold that the bequest of 166 shares of the "St. Jo. Lead Mining Company" stock and 33 shares of the "Cattle Company" was a specific bequest, and that the legatees to whom that bequest was made are entitled to the 654 shares of St. Joseph Lead Mining Company stock held by the decedent at the time of her death.

Submit decree in accordance with this decision.

---

In re LEIGH'S ESTATE.

(Surrogate's Court, New York County. April 9, 1915.)

1. WILLS ⬅⟶540—CONSTRUCTION—INTERESTS BEQUEATHED—RESIDUARY ESTATE.

A will provided that the remainders of testatrix's estate should be divided between her two living sisters, "and after that" among the "living children" of her own and half brothers and sisters, except the children of a certain brother, who had already been provided for. Testatrix was survived by her two sisters, and also by several nephews and nieces. One niece and one nephew predeceased her, each leaving issue surviving. *Held*, that it was testatrix's intention that her residuary estate should be divided into two parts, and the income paid to the two sisters during their lives, the bequest to them being as tenants in common; that on the death of either sister the share left her should be divided among testatrix's nieces and nephews living at testatrix's death; and that, hence, the children of the nephews and nieces who predeceased testatrix were not entitled to any part of the residuary estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1164, 1302–1309; Dec. Dig. ⬅⟶540.]

2. **WILLS** ⊚⟹471—CONSTRUCTION—CONFLICTING CLAUSES—RECONCILIATION— BEQUESTS.

Bequests will not be sacrificed for apparent inconsistency in the provisions of the will, where it is possible to so construe such provisions as to reconcile the apparently conflicting clauses.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 989; Dec. Dig. ⊚⟹471.]

3. **WILLS** ⊚⟹540—CONSTRUCTION—VESTING OF INTERESTS—TIME.

Where the time to determine the rights of persons to take as survivors is not clearly fixed as being the date of the termination of the particular estate, it will be presumed to be the date of testatrix's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1164, 1302–1309; Dec. Dig. ⊚⟹540.]

In the matter of the estate of Alice Leigh. The Farmers' Loan & Trust Company filed an account of its proceedings as executor, and asked for construction of the will. Decision according to opinion.

Dawes, Abbott & Chester, of New York City (Hamilton M. Dawes, of New York City, of counsel), for Mary L. Adams and others.

Geller, Rolston & Horan, of New York City, for executor.

O'Flaherty, Fulton & Byrd, of Richmond, Va., for Mrs. J. L. Harrison.

Willis B. Smith, of Richmond, Va., for Mrs. A. C. Old.

Warren Leslie, of New York City, special guardian.

FOWLER, S. The Farmers' Loan & Trust Company has filed an account of its proceedings as executor of the last will and testament of the testatrix and asks the court to construe the following clause of her will:

"The remainders of my estate between my two living sisters, Julia Leigh Harrison, Tanstall, Virginia, and Anne Carter Old, Clayville, Virginia, and after that among the living children of my own and half brothers and sisters, except the children of my late brother, Chapman Johnson Leigh, as they are already provided for."

The testatrix was survived by her sisters, Julia Leigh Harrison and Anne Carter Old. She was also survived by a large number of nephews and nieces. Anne C. Wickman, a niece, and William Old, a nephew, predeceased the testatrix, and each of them left issue which survived her.

[1] It is contended on behalf of the sisters of testatrix that they are entitled absolutely to the entire residuary estate, while the nephews and nieces contend that the said sisters are only entitled to a life estate in the residuary, and that the remainder vested in them, the nephews and nieces, upon the death of the testatrix. The children of Anne C. Wickman and of William Old contend that they are entitled to the share which their respective parents would have taken had they been living at the date of death of the testatrix.

This is a holographic will. It is inartistic in its arrangement, and the language is not so clear and definite as to preclude considerable doubt concerning the intention of the testatrix. It is evident from a consideration of the entire will that she intended that her sisters should

be the principal beneficiaries of her testamentary bounty, but as no provision was made for the nephews and nieces of the testatrix in any part of the will, except that contained in the clause above quoted, it is reasonable to assume that she intended by the language of that clause to bequeath to them some interest in her estate. The use of the words "and after that" indicates that she did not intend to give the residuary estate absolutely to her sisters. If she had intended that her residuary estate should be divided between her two sisters, and that each should have one-half absolutely, there would be no need for the direction to make distribution among the children of her brothers and sisters, because there would be nothing to divide among them.

This is not a case where a large number of bequests intervene between two apparently conflicting bequests under circumstances which might give rise to an inference that the testatrix had forgotten or overlooked the disposition of the property by a prior bequest. Here the bequests of the residuary estate are contained in one sentence. In the first clause of the sentence there is a bequest to the sisters; in the second there is a bequest to the living children of the brothers and sisters of the half and the whole blood of the testatrix. The ambiguity as to the quantity of the estate which she intended to give to her sisters arises from her failure to expressly define or describe the bequest to them. There is an absence of technical limitation. While she did not use words which would clearly indicate that she intended to limit the estate of her sisters to the terms of their respective lives, it is clear that she intended such a limitation by the use of the words "and after that among the living children," etc.

[2] A bequest of any part of the residuary estate to the living children of her brothers and sisters would be inconsistent with an absolute bequest of the same property to her sisters. But the bequests will not be sacrificed for apparent inconsistency when it is possible to construe the provisions of the will in such a manner as to reconcile the apparently conflicting clauses. Goodwin v. Coddington, 154 N. Y. 283, 48 N. E. 729; Trask v. Sturges, 170 N. Y. 482, 63 N. E. 534; Matter of Griffin, 75 Misc. Rep. 441, 135 N. Y. Supp. 518; Matter of Wagman, 163 App. Div. 127, 148 N. Y. Supp. 473.

It appears to me, therefore, that it was the intention of the testatrix that her residuary estate should be divided into two parts, and that the income from one of these parts should be paid to each of her sisters during their lives; that the bequest was to them as tenants in common (Van Brunt v. Van Brunt, 111 N. Y. 178, 19 N. E. 60; Mills v. Husson, 140 N. Y. 104, 35 N. E. 422), and that upon the death of either of the sisters the one-half of the residuary estate held for her benefit should be divided among the nephews and nieces of the testatrix who were living at the time of her death.

[3] It is a well-established rule of interpretation that, unless the time to determine the right of persons to take as survivors is clearly fixed as the date of the termination of the particular estate, it will be presumed to be the date of death of the testatrix. Matter of Geissler, 72 App. Div. 85, 76 N. Y. Supp. 100; Embury v. Sheldon, 68 N. Y. 227; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388. The testatrix

was careful to indicate the children of her brothers and sisters who would take upon the termination of the life estate given to her sisters, namely, those who were living at the time of her death. Her use of the words "living children" indicates that she wished to exclude from participation in her estate the children of any of the nephews and nieces who had predeceased her. Unless so construed, those words would be meaningless. It seems to me, therefore, that the children of the nephews and nieces who predeceased the testatrix are not entitled to any part of the residuary estate left by her.

I will appoint Peter B. Olney, Esq., referee, to hear and determine the claims presented by May Love Landon against the estate and which have been rejected by the executor. The account of the executor does not show whether the claim of Dr. Huddleston has been admitted or rejected. If it has been rejected by the executor, it will be determined by the referee appointed to hear and determine the claims of May Love Landon.

Upon the filing of the referee's report a decree may be submitted on notice providing for distribution of the estate among the legatees and directing that the residuary estate be held by the executor named in the will for the purpose of paying the income thereof to the sisters of testatrix during their respective lives, and for distribution among the remaindermen upon the termination of the particular estate.